Martin DAVIS, Appellant,

v.

The STATE of Texas.

No. 918–96.

Court of Criminal Appeals of Texas, En Banc.

June 4, 1997.

Ray Bass, Austin, for appellant.

David V. Wilson II, Assist. District Attorney, Lufkin, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellant was convicted of possession of marihuana and sentenced to five years confinement. Tex. Health & Safety Code Ann. § 481.121. The Court of Appeals affirmed. *Davis v. State*, 923 S.W.2d 781 (Tex.App.— Beaumont 1996). We granted review to determine whether the Court of Appeals erred in holding further detention was justified after the officer determined appellant was not driving while intoxicated. We will reverse.

### I.

### A.

The following facts are taken from the Court of Appeals opinion. Appellant was stopped at 1:00 a.m. in Lufkin for suspicion of driving while intoxicated. Appellant exited his vehicle and walked to the officers' patrol vehicle. When told the reason for the stop, appellant stated he was not intoxicated, merely tired. The officers did not detect an odor of alcohol on appellant; nor did they detect an odor of alcohol or any type of drug emanating from the vehicle. The officers determined appellant was not intoxicated. At this point, the initial purpose of the traffic stop was completed. *Davis*, 923 S.W.2d at 784.

The officers questioned appellant and his passenger separately. Appellant stated he was from New York and he and the passenger had been looking at apartment buildings. The passenger stated she was accompanying appellant while he looked at property in Houston. The officers believed the statements were inconsistent. *Id.* at 784–785.

A background check on appellant revealed appellant had no history of convictions and his drivers' license was valid. A background check on the passenger revealed she had an arrest and conviction for a drug offense. A license check on the vehicle revealed the car was not in appellant's name; however, the check also revealed the vehicle was not reported stolen. Appellant stated the vehicle was borrowed from his girlfriend. The insurance papers on the vehicle were in proper order. The officers concluded appellant did not appear to be someone who was on a business trip. *Id.* at 785.

After questioning appellant and the passenger, the officers asked appellant for permission to search the vehicle. Appellant refused to give consent.[1] One of the officers did a pat down search of appellant but found no weapons or drugs. The officers then informed appellant that he was free to leave at any time but the vehicle was being detained for an on-scene investigation. A canine unit was called to the scene. The narcotics dog arrived and made a positive alert at the trunk of the vehicle. Upon request, appellant handed the keys to an officer who searched the trunk. Inside the trunk the officer found a suitcase containing marihuana. The trial judge overruled appellant's motion to suppress this evidence. *Ibid.*

---

1. The videotape of the detention reveals the officers *twice* asked appellant for consent to search the vehicle and *twice* appellant refused.

### B.

A majority of the Court of Appeals held:

... the fact that appellant was traveling late at night in a borrowed car, appeared nervous, was dressed poorly considering the explanation for travel given, told a story which could be interpreted as being inconsistent with that of his passenger, immediately got out of his vehicle when stopped and went back to the patrol car door, and repeatedly attempted to distance himself from his own vehicle, was enough to raise reasonable suspicion justifying further detention until the drug dogs came to the scene to sniff the car.

*Davis*, 923 S.W.2d at 789.

However, in dissent, Justice Burgess stated:

... even taking those facts as true, within the "totality of the circumstances" and viewing them in the light most favorable to the trial court's ruling, *see State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996), they are not, as a matter of law, specific articulable facts which created a reasonable suspicion that criminal activity was afoot.

Where events are as consistent with innocent activity as with criminal activity, detention based upon those events is unlawful. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). The suspicious conduct relied upon by the officers must be sufficiently distinguishable from that of innocent people under the same circumstance to clearly, if not conclusively, set the suspect apart from them. *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App. 1991).

*Davis*, 923 S.W.2d at 790. The dissent concluded: "The Fourth Amendment, in my view, protects late-night, out-of-state travelers from being subjected to detentions that provide officers the opportunity to 'get lucky.'" *Id.*, 923 S.W.2d at 791-92.

We granted review to determine whether the decision of the of the Court of Appeals conflicts with the applicable decisions of the United States Supreme Court, this Court

and/or the courts of appeals. Tex.R.App. P. 200(b)(1), (3) and (5). *See, Crockett v. State*, 803 S.W.2d 308 (Tex.Cr.App.1991); *Daniels v. State*, 718 S.W.2d 702 (Tex.Cr.App.1986); *and, Montano v. State*, 843 S.W.2d 579 (Tex. Cr.App.1992).

### II.

### A.

In the landmark case of *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), the Supreme Court recognized the rights insured by the Fourth Amendment belong "as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Id.*, 392 U.S. at 8–9, 88 S.Ct. at 1873. However, the Fourth Amendment does not forbid all searches and seizures, but only *unreasonable* searches and seizures. *Ibid.* (quoting *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960)).[2]

The question in *Terry* was whether it was always unreasonable for a peace officer to seize a person and subject him to a limited search unless there is probable cause for an arrest. *Id.*, 392 U.S. at 15, 88 S.Ct. at 1877. The Court held that even though a "stop" and "frisk" was a search and seizure under the Fourth Amendment, *id.*, 392 U.S. at 16, 88 S.Ct. at 1877, such actions by peace officers could be reasonable under the Fourth Amendment. To determine the reasonableness of such an investigative detention the Court adopted a dual inquiry: (1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*, 392 U.S. at 19–20, 88 S.Ct. at 1879.

Under the first prong, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, 392 U.S. at 21, 88 S.Ct. at 1880. In short, the officer must have

---

**2.** The Fourth Amendment is applicable to the States under the Fourteenth Amendment. *See, Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); *and, Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

a reasonable suspicion.[3] In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate. *Id.,* 392 U.S. at 21–22, 88 S.Ct. at 1880.[4] An investigative detention not based on reasonable suspicion is unreasonable and, thus, violative of the Fourth Amendment.

■ The second prong of *Terry* deals with the scope of the detention. The Court noted that an investigative detention, "like any other search, must be strictly circumscribed by the exigencies which justify its initiation." *Id.,* 392 U.S. at 25–26, 88 S.Ct. at 1882. The scope of the search must be limited because "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Id.,* 392 U.S. at 18, 88 S.Ct. at 1878. Several years later, the Supreme Court stated:

> The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.*[5]

*Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). This limitation means that once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Ohio v. Robinette,* — U.S. —, —, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996) (Ginsberg, J., concur-

ring). Consequently, a detention that is not temporary and reasonably related in scope to the circumstances which justified the interference, is unreasonable and, thus, violative of the Fourth Amendment.

■ While a *Terry*-stop is traditionally considered in the context of a seizure of the person, the Supreme Court has extended *Terry* to personalty as well. *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). As the Court stressed in *Place,* even though the defendant may be free to leave, the seizure of the personalty is still a restraint upon the person.

> . . . The precise type of detention we confront here is seizure of personal luggage from the immediate possession of the suspect for the purpose of arranging exposure to a narcotics detection dog. Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary. The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage. Moreover, he is not subjected to the coercive atmosphere of a custodial confinement or to the public indignity of being personally detained. Nevertheless, such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return. Therefore, when the police seize luggage from the suspect's custody, we think the limitations applicable to investigative detentions of the person should

---

**3.** As the Court further explained:
> . . . [i]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.,* 392 U.S. at 27, 88 S.Ct. at 1883.

**4.** The Court continued:
> . . . And simple good faith on the part of the arresting officer is not enough. . . . If subjec-

tive good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects only in the discretion of the police.

*Id.,* 392 U.S. at 21–22, 88 S.Ct. at 1880 (quoting *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964))(internal quotations deleted).

**5.** All emphasis is supplied unless otherwise indicated.

define the permissible scope of an investigative detention of the person's luggage on less than probable cause.

*Id.*, 462 U.S. at 708–709, 103 S.Ct. at 2645. In sum, for an intrusion on such personalty, reasonable suspicion is required and, even if reasonable suspicion exists, the detention must be temporary and last no longer than necessary to effectuate the purpose of the intrusion.

### B.

Consistent with *Terry*, Texas courts require reasonable suspicion before a seizure of the person or property can occur. For example, in *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Cr.App.1989), this Court stated:

> ... It is clear that circumstances short of probable cause may justify temporary detention for purposes of investigation. *Schwartz v. State*, 635 S.W.2d 545, 546 (Tex.Cr.App.1982); *Terry v. Ohio*, supra. To justify an investigative detention, the officer must have specific articulable facts, which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts would warrant the intrusion on the detainee. These facts must amount to more than a mere hunch or suspicion. *Williams v. State*, 621 S.W.2d 609, 612 (Tex.Cr.App. 1981). The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime. *Meeks v. State*, 653 S.W.2d 6, 12 (Tex.Cr.App.1983); *Schwartz*, supra at 547, citing, *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr.App.1978).

■ Similarly, in *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Cr.App.1991), we recognized:

> It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45

L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nevertheless, even a temporary detention of this kind is not permissible unless the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Cr.App.1983).

*See also, Davis v. State*, 829 S.W.2d 218 (Tex.Cr.App.1992), and, *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983). In short, under our interpretation of *Terry* and its progeny, reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Cr.App.1992) (citing *Garza*, 771 S.W.2d at 558).

Additionally, Texas Courts recognize that investigative detentions become unreasonable when they are not reasonably related in scope to the circumstances which justified the interference in the first place. For example, in *Collier v. State*, 843 S.W.2d 176, 177 (Tex.App.—Houston [14th Dist.] 1992), officers stopped a vehicle to question its occupants about their possible involvement in a narcotics transaction. The driver and Collier denied any involvement. A citation was written to the driver for an expired license and no proof of liability insurance but the officers found nothing to confirm their suspicion of a narcotics transaction or any other criminal activity. Nevertheless, the officers radioed for a female officer to search the occupants. The officers testified the women were not under arrest, yet the officers continued to detain the women even though there was no probable cause to justify an arrest or a continued detention. The *Collier* Court stated:

> ... [An investigative] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. The police may not carry out a full search of the person or his effects. Nor

may they verify their suspicions by means that approach an arrest.

*Id.,* 843 S.W.2d at 177 (internal quotation marks and cites deleted). The court held that the continued detention of Collier was unlawful and, therefore, reversed her conviction. *See also, Ussery v. State,* 651 S.W.2d 767, 770 (Tex.Cr.App.1983) (a detention for investigatory purposes must be limited; it must be temporary and last no longer than necessary to effect the purpose of the stop); *Lopez v. State,* 663 S.W.2d 587, 589 (Tex. App.—Houston [1st Dist.] 1983) ("[a]n investigative detention *must* be temporary and last no longer than is necessary to effectuate the purpose of the stop.") (emphasis in the original); *and, Anderson v. State,* 787 S.W.2d 221, 229 (Tex.App.—Fort Worth 1990) ("[t]he propriety of the duration of the detention is judged by whether police pursued a means of investigation which dispelled or confirmed their suspicions quickly and in a manner that did not exceed the scope of the detention.").

On the basis of these cases, the law is clear.

An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325–26. The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

*Perez v. State,* 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991). "The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly." *Perez,* 818 S.W.2d at 517 (citing *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)).

### III.

■ In the instant case, appellant was stopped for suspicion of driving while intoxi-

cated. The parties do not contest the reasonableness of the stop. Therefore, we begin our inquiry with the assumption that this investigation was reasonable. Under the authority cited above, this investigative detention was required to be temporary and could last no longer than was necessary to determine whether appellant was intoxicated.[6] *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325–26. Moreover, the officers were required to employ the least intrusive means reasonably available to verify or dispel their suspicion in a short period of time. *Perez,* 818 S.W.2d at 517. Their suspicion was dispelled with appellant's explanation that he was tired, not intoxicated, and the lack of an odor of alcohol or drug emanating from either appellant or his vehicle. In sum, the purpose of the investigative detention was effectuated when the officers determined appellant was not intoxicated. *Davis,* 923 S.W.2d at 784.

■ Nevertheless, the officers continued to detain appellant and the vehicle. This continued detention revealed that appellant had a valid driver's license and there were no warrants for his arrest. The pat down search of appellant revealed neither a weapon nor contraband. The continued detention of appellant was based upon the officer's conclusion that appellant did not appear to be someone who was on a business trip. However, this conclusion was not based upon articulable facts which, taken together with rational inferences from those facts, would warrant a man of reasonable caution in the belief that continued detention was justified. *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880. Indeed, when viewed in an objective fashion, no known fact, or rational inferences from those facts, would support the conclusion that appellant was engaged in or soon would engage in criminal activity. *Crockett,* 803 S.W.2d at 311. The officers obviously made the same determination because they informed appellant that he was free to leave. *Davis,* 923 S.W.2d at 785. Consequently, the

---

6. We pause to note that in a traffic stop situation, an officer may demand identification, a valid driver's license, and proof of insurance from the driver. Tex. Trans. Code §§ 521.025, 601.053 (Vernon's Supp.1996); *and, Sendejo v. State,* 841 S.W.2d 856, 859 (Tex.App.—Corpus Christi 1992). Additionally, it is not unreasonable for an officer to check for outstanding warrants. *Smith v. State,* 840 S.W.2d 689, 692 (Tex.App.—Fort Worth 1992) (citing *Petty v. State,* 696 S.W.2d 635, 639 (Tex.App.—Dallas 1985, no pet.)). *See also, United States v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993).

Court of Appeals erred in holding there was a reasonable suspicion that appellant was engaged in criminal activity. *Davis,* 923 S.W.2d at 789.

 We now turn to consider the continued detention of the vehicle. First, we note that even though the officers stated appellant was free to leave, he was effectively restrained as it was 1:00 a.m., appellant's destination was New York state and his only visible means of transportation was the detained vehicle. Therefore, in detaining the vehicle, the officers were effectively depriving appellant of his liberty interest of proceeding with his itinerary. *Place,* 462 U.S. at 708–709, 103 S.Ct. at 2645. As previously noted, there was no justification for appellant's detention.

 Second, when the officers decided to detain the vehicle, they knew the vehicle was not reported stolen and the insurance papers were in proper order. Additionally, there was no odor of alcohol or any type of drug emanating from the vehicle. *Id.,* at 784–85. The absence of an odor is important when we remember the purpose of the stop was to determine if appellant was intoxicated. In short, there was nothing out of the ordinary about the vehicle nor was there any indication that the vehicle was in any way related with criminal conduct. *Viveros,* 828 S.W.2d at 4. Consequently, the Court of Appeals erred in holding the continued detention of the vehicle was reasonable. *Davis,* 923 S.W.2d at 789.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court.

MANSFIELD, Judge, concurring.

I join the opinion of the Court and write to express my concern that, in our well-meaning efforts to combat the flow of illegal drugs in our state and our country, we are coming close to destroying the protections afforded citizens from unreasonable searches and seizures under the United States and Texas Constitutions.

The record supports the conclusion the initial stop of appellant for suspicion of driving while intoxicated was permissible as a temporary investigative detention to determine if appellant was driving while intoxicated. The uncontested testimony of Officer Bivins was that appellant's vehicle was observed weaving within its lane, behavior consistent with potential driver intoxication. Officer Bivins testified he stopped appellant's vehicle and subsequently informed appellant of the reason for the stop. Officer Bivins testified he did not detect any odor of alcohol on or about appellant's person. A check of the vehicle's license plates—which were from New York—did not reveal any indication that it was stolen or involved in a criminal offense. Appellant also produced a valid New York driver's license and informed Officer Bivins he was in the process of returning to New York.

Officer Bivins then approached appellant's vehicle. Appellant's female passenger identified herself and produced a valid New York driver's license. She told Officer Bivins she was not appellant's girlfriend but had driven with appellant to Houston a few days earlier to check out some property, and they were now on their way back to New York. Officer Bivins testified he did not detect any "suspicious odors" inside the vehicle or anything else which suggested that drugs were present. Appellant also informed Officer Bivins the vehicle belonged to his girlfriend, Nancy Terasockus, and showed Officer Weatherford (Bivins' partner) insurance papers on the vehicle. Officer Bivins testified he was satisfied at that point appellant was not intoxicated. He did not cite appellant for any traffic offense. Appellant informed Officer Bivins he had been arrested once, for "a college protest" 25 years ago.

It has been a long-established principle of law that a police officer may briefly detain a person for limited investigative purposes if, based on specific articulable facts, an objectively reasonable suspicion exists that the person has committed, is committing, or is about to commit a crime. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Saenz v. State,* 842 S.W.2d 286 (Tex.Crim. App.1992); *Hernandez v. State,* 523 S.W.2d 410 (Tex.Crim.App.1975). No person, however, may be detained, even momentarily, without reasonable and objective grounds.

*Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). These principles apply to a seizure of personal property (e.g. a vehicle) for temporary investigative purposes. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Furthermore, any detention which goes beyond the limited exception constitutionally permitted for temporary investigative detentions must be supported by probable cause. *Dunaway v. New York, supra; Florida v. Royer, supra; Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989).

It is not disputed by either the State or the appellant that the initial stop of appellant was a valid temporary investigative detention, its sole purpose being to determine if appellant was driving while intoxicated. The officers quickly determined appellant was not intoxicated. It is equally clear the Fourth Amendment did not prohibit the police officers, pursuant to a valid temporary investigative detention, from checking appellant's drivers license to determine it was valid,[1] to verify the vehicle was not stolen or otherwise suspected of being involved in criminal activity, and to determine if appellant maintained required liability insurance. Finally, the police officers' non-invasive visual check of the passenger compartment for the odor of drugs or alcohol and for the presence of contraband, weapons and other evidence *in plain view* of criminal activity was also constitutionally permissible as part of a temporary investigative detention. Up to this point, every action taken by the officers was reasonably a part of their valid temporary investigative detention to determine if appellant was driving while intoxicated.

Unfortunately, having accomplished their objective, the officers proceeded to cross the line into constitutionally-forbidden territory. As stated in Justice Burgess' dissenting opinion, we have held where events are as consistent with innocent activity as with criminal activity, detention based upon those events is unlawful. The suspicious conduct relied upon by the officers must be sufficiently distinguishable from that of innocent people under the same circumstances to clearly, if not conclusively, set the suspect apart from them. *Davis v. State,* 923 S.W.2d 781, 790 (Tex.App.–Beaumont 1996), citing *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991); and *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

The justifications cited by the officers to continue the investigation, which included forcing appellant to allow a drug-detection dog to sniff his vehicle, are, at best, tenuous. The first justification given was it was late at night, about 1 A.M. While some drug dealers do travel after midnight on Texas interstate highways, so do thousands of law-abiding Texans every day of the week (including this writer who has first-hand knowledge of the large volume of traffic on the many interstates of Texas at all times of the day and night gained while campaigning for the Court throughout much of 1993 and 1994). The videotape indicates close to 100 vehicles passed by during the stop and investigation of appellant. Traveling at night is *not* in any way inherently suspicious.

A second factor cited by the police to justify the continued investigation was appellant told him the vehicle was borrowed. It is hard for this writer to find this as suspicious, especially since the officers had already verified the vehicle was not stolen or wanted in connection with criminal activity, the insurance papers were in order and appellant had volunteered the vehicle belonged to his girlfriend and gave them her name. The status of the vehicle, in light of the information already verified by the officers, is no indication of suspicious, much less criminal, activity.

Another factor cited by the police was appellant's attire was "not consistent with his claimed status as a businessman." Appellant was dressed casually at the time of the stop. To suspect someone of criminal activity who is in the process of driving from Houston to New York at 1 A.M. because he is not wearing a suit or similar attire is absurd. This Court has previously rejected attire as a ground for police to "stop and frisk" an indi-

---

1. Additionally, it was constitutionally permissible to "run" appellant's license number through the computer to determine if he was the subject of any outstanding warrants.

vidual. *Baker v. State*, 478 S.W.2d 445 (Tex. Crim.App.1972).

The officers also testified appellant appeared "nervous" and his movements were suspicious after they stopped his vehicle. With respect to his movements, appellant exited his car and approached the officers' vehicle. Far from being suspicious, appellant's movements were consistent with an intent to demonstrate he was neither dangerous nor drunk and his desire "to make points with the police by coming to them instead of making them come to him." There is nothing (the stop was videotaped) to support any contention appellant was trying to hide anything or to hinder the investigation.

As for appellant acting nervous, it was 1 A.M., he was tired and he was a resident of a distant state stopped late at night by the police in a relatively rural area. Under such circumstances, many, if not most, people would be nervous. It is not indicative of guilt for a person to be nervous when confronted by police officers asking questions. *Montano v. State*, 843 S.W.2d 579 (Tex.Crim. App.1992).

Although the record does not affirmatively state so, it is reasonable to assume that perhaps the main reason why the investigation continued after the police determined appellant was not driving while intoxicated was the fact he was from out-of-state. It is common knowledge that a significant source of illegal drugs consumed in the midwestern and northeast sections of the country is Mexico and southeast Texas, including Houston. It is also common knowledge that a large percentage of these drugs are transported by vehicle and two of the major freeways utilized by the vehicles are Interstate 10 and Interstate 59 (which goes through Lufkin, where appellant's vehicle was stopped). Neither the Fourth Amendment nor Article IV, Section 2 of the United States Constitution allow police to single out vehicles with out-of-state license plates as out-of-state residence is not a ground to suspect those in the vehicle of criminal activity. Likewise, an individual's out-of-state residence does not constitutionally permit the continuation of the investigation of said individual once the justification for the stop itself has ended.

As the front-line warriors in the war against drugs, police officers see first-hand the tremendous harm caused every day by those who deal in drugs and the destruction of the lives and families of many of the users of drugs. There is little doubt in my mind the police officers acted with the best of intentions, yet we provide often-conflicting guidelines as to how police officers are to conduct this war. Similar to the shabby treatment by our society of those Americans who served in Vietnam upon their return from Southeast Asia, police officers suffer the taunts of detractors (notably in the worlds of academia and entertainment) who mock their efforts and their sacrifice.

In the present case, however, I must agree with the Court that applicable precedent from the Supreme Court and this Court does not permit continuance of a valid temporary investigative detention once the purpose of the detention has been accomplished and where, as here, the totality of the circumstances did not reasonably justify the officers' continuing suspicion and investigation of appellant as a criminal suspect.

*I join the opinion of the Court.*

KELLER, Judge, concurring.

I write separately to comment on the appropriate standard of review. Although it does not expressly say so, the majority opinion apparently decides de novo that the circumstances in the present case do not constitute reasonable suspicion to detain appellant's vehicle for further investigation. I agree with this approach. As I stated in my concurring opinion in *Villarreal*, appellate courts must always give deference to trial courts' determinations of historical fact, but some application of law to fact questions warrant *de novo* review. *Villarreal v. State*, 935 S.W.2d 134, 145–150 (Tex.Crim.App. 1996) (Keller, J. concurring)

The Supreme Court has mandated, in the federal system, de *novo* review of what circumstances constitute reasonable suspicion. *Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). While

we *may* not be bound to apply the same standard in the state system, we should seriously consider following the Supreme Court's lead when federal constitutional issues are involved. *Villarreal,* 935 S.W.2d at 149. I believe there is good reason to follow the Supreme Court's lead here. Whether a certain set of circumstances gives rise to reasonable suspicion should be viewed de novo because doing so will advance uniform outcomes and provide guidance for law enforcement behavior. *Id.* at 148 (citing *Thompson v. Keohane,* —— U.S. ——, ——, 116 S.Ct. 457, 467, 133 L.Ed.2d 383 (1995)). While reasonable suspicion is a "fluid concept," that is "not readily, or even usefully, reduced to a neat set of legal rules," a case-by-case *de novo* evaluation is nevertheless desirable as a way to "reduce the area of uncertainty." *Villarreal,* 935 S.W.2d at 147 & 148 (quoting from *Ornelas,* —— U.S. at ——, 116 S.Ct. at 1661 and *Thompson,* —— U.S. at —— n. 13, 116 S.Ct. at 466 n. 13). Indeed, because the concept of reasonable suspicion acquires content only through application, *de novo* review is "necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Villarreal,* 935 S.W.2d at 149 (quoting from *Ornelas,* —— U.S. at —— – ——, 116 S.Ct. at 1661–1662, 134 L.Ed.2d at 919).

In his dissenting opinion, Judge Meyers contends that my reliance upon *Ornelas* is misplaced because the Supreme Court "did not address the appropriate standard of review for *discretionary review* courts ... but ... set out the appropriate standard of review for appellate courts reviewing trial court decisions." Dissenting op. at 251 n. 1 (emphasis in original, ellipses inserted). But in *Ornelas,* the Supreme Court, a discretionary review court, recognized that *it* had conducted *de novo* reviews, and the Court referred to *its own practice* to support its holding that lower appellate courts should do the same. —— U.S. at ——, 116 S.Ct. at 1661–1662, 134 L.Ed.2d at 919.

In this vein, the Supreme Court cited *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) and *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). *Ornelas,* —— U.S. at ——, 116 S.Ct. at 1661–1662, 134 L.Ed.2d at

919. In *Brinegar,* the trial court held that government agents lacked probable cause to search the defendant's car. 338 U.S. at 163, 69 S.Ct. at 1304–1305 (The trial court denied the defendant's motion to suppress on an alternate ground). The Court of Appeals took the same view as the trial court. *Id.* Nevertheless, the Supreme Court disagreed with the lower courts after conducting a *de novo* review based upon *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543—despite the fact that neither of the courts below had considered the *Carroll* case. *Brinegar,* 338 U.S. at 164 n. 3, 171, & 171 n. 10, 69 S.Ct. at 1305 n. 3, 1308, 1308 n. 10. In *White,* the Supreme Court held that an anonymous tip, combined with the particular corroborating facts present in the case, gave rise to reasonable suspicion. 496 U.S. at 332, 110 S.Ct. at 2417. The Court of Appeals opinion to the contrary was overturned, even though the Supreme Court characterized the case as a "close" one. *Id.*

Hence, the Supreme Court has recognized that it may, but need not, remand a case to a lower appellate court to conduct a de *novo* review under the proper standards. The Supreme Court has also explained that it will not defer to any *de novo* determinations made by lower appellate courts but will conduct its own de novo review in these types of cases. While statements by the Supreme Court in *Ornelas* concerning its own practice of *de novo* review may technically be *dicta in that case,* such statements are an (accurate) assessment of the *holdings* of other Supreme Court cases and should not be lightly dismissed.

Unlike the dissent, I do not believe that *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim. App.1992) requires a different result. *Arcila* is concerned with our review of a lower appellate court's resolution of factual issues, not with application-of-law-to-fact questions that are treated as questions of law. *Id.* at 360 ("ultimate responsibility for the resolution of *factual disputes* lies elsewhere") (emphasis added) & 361 ("we decline to substitute our own judgment on ultimate questions of *fact* for that of the lower courts") (emphasis added). In his concurring opinion in *Villarreal,* Judge Clinton correctly recognized that the

appropriate standards of review on appeal and on discretionary review are "functionally identical" questions. 935 S.W.2d at 143 (Clinton, J., concurring). The interest in uniformity of outcomes that supports conducting a *de novo* review applies equally to direct appeal and discretionary review proceedings. *Id.* To leave constitutional norm elaboration solely to the courts of appeals would substantially thwart the purpose of requiring *de novo* review: uniformity is best achieved with one interpretation rather than fourteen. The critical inquiry is whether the issue before us is the kind of issue subject to *de novo* review. If it is, then *Arcila* is inapplicable. With these comments, I join the majority opinion.

McCORMICK, P.J., joins.

MEYERS, Judge, dissenting.

The majority disagrees with the court of appeals in this case with good reason. In fact, had I been a judge on the court of appeals I most probably would have joined Judge Burgess in concluding that the detention of appellant's vehicle was constitutionally problematic. *Davis v. State*, 923 S.W.2d 781 (Tex.App.—Beaumont 1996)(Burgess, J., dissenting). But I am not a judge on the court of appeals—I am a judge on the Court of Criminal Appeals. As such, I am bound to respect the judgment of the court of appeals so long as it "fairly addresses [the issues raised on appeal], using the correct legal standard, considering all relevant evidence in the record, and affording proper deference to the trial court as primary factfinder". *Arcila v. State*, 834 S.W.2d 357, 360 (Tex.Crim.App. 1992). Of course, when the court of appeals fails in any one of these duties, this Court should step in and both articulate the way in which it erred and also set out the correct way of doing things. After that, we should send the case back to the court of appeals so that it can make a new determination in light of our suggestions. To do more is intrusive, not instructive. *Id.*

In the present cause, the Ninth Court of Appeals determined that the trial court did not abuse its discretion in denying appel-

lant's motion to suppress. It came to this determination after considering six factors which, it found, "gave rise to reasonable suspicion ... that criminal activity was afoot". But the court of appeals should not have considered the three of these six factors which arose only after the initial purpose of the stop had ended. In other words, in deciding whether reasonable suspicion existed to justify detaining appellant beyond the point at which the officers determined he was not intoxicated, the court of appeals should have considered only those factors that the officers could have known about at that point. Pursuant to a license check on the vehicle that appellant was driving and a conversation between the officers and appellant, the officers determined that the vehicle was borrowed and that appellant's story that he was a businessman evaluating some real estate in Houston was problematic because it conflicted with that of his passenger and did not seem plausible in light of appellant's attire, which the officers deemed too casual for someone on a purported business trip. But, since both the license check and the conversation with appellant came *after* the officer's determined appellant was not intoxicated, the court of appeals should not have considered any factors gleaned from either in deciding whether the officers' had reasonable suspicion to further detain appellant. Thus, the court of appeals should have considered only whether the remaining factors, that appellant was traveling late at night, that he seemed to want to keep the officers away from his car, and that he was "really nervous", amounted to conduct that is more consistent with criminal activity than with innocent activity such that reasonable suspicion to constitutionally justify a further detention of appellant and his vehicle existed. *Saenz v. State*, 842 S.W.2d 286, 289 (Tex.Crim.App.1992). Because the court of appeals did not do this, we ought to remand this case to them and allow them the opportunity to do so.

I dissent to the majority's *de novo* review of the trial court's ruling.[1]

---

1. In her concurring opinion, Judge Keller ap-

plauds the majority's use of *de novo* review in

this case and, in so doing, suggests that in setting the appropriate standard of review for this Court we ought to "follow the Supreme Court's lead" in *Ornelas–Ledesma v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (mandating *de novo* appellate review of probable cause and reasonable suspicion findings in federal court). In conducting its *de novo* review in this case, the majority does not rely at all on *Ornelas–Ledesma*. This is probably because the majority understands that the holding in *Ornelas–Ledesma* did not address the appropriate standard of review for *discretionary review* courts like this Court, but instead set out the appropriate standard of review for appellate courts reviewing trial court decisions. No doubt, in mandating *de novo* review on questions of probable cause and reasonable suspicion in the lower appellate courts, the Supreme Court noted its own practice of conducting *de novo* reviews for support that appellate courts should do the same. But *dicta* in a Supreme Court opinion that applies only to federal courts ought not be thought of as persuasive authority on this Court, especially when this Court has already stated that we should not be conducting *de novo* reviews in circumstances like the one presented here. *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992). The concurrence contends that *Arcila* extends only to factual questions, not to application of law to fact questions. Yet the concurring opinion does not explain what we could have meant in *Arcila* when we stated that "[o]ur principal

role as a court of last resort is the caretaker of Texas law, not the arbiter of individual *applications*". *Id.* at 360 (emphasis added). Nor does the concurring opinion explain how the question of whether probable cause or reasonable suspicion exist are any more legal than the question in *Arcila*, which was whether the police had obtained adequate consent to search appellant's residence. As with probable cause and reasonable suspicion, we have a body of cases that, taken together, set out when the police have obtained consent to search.

Furthermore, if it is true, as the concurring opinion, citing Judge Clinton in *Villarreal v. State*, 935 S.W.2d 134, 143 (Tex.Crim.App.1996) (Clinton, J., concurring), contends, that "the appropriate standards of review on appeal and on discretionary review are 'functionally identical' questions", then didn't we essentially determine these questions in *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App.1996) and *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996), decided just this past year? In fact, in his *Villarreal* concurrence, Judge Clinton adhered to the basic tenet of *DuBose* and *Carter* that "practically all applications of law to fact should be left to the trial court in the first instance, subject to a deferential standard of appellate review". *Villarreal v. State*, 935 S.W.2d at 142 (Clinton, J., concurring). To the best of my knowledge, *DuBose* and *Carter* have not been overruled yet.