TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00175-CR







David Sosa, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY


NO. 522677, HONORABLE MIKE DENTON, JUDGE PRESIDING







The county court at law found appellant David Sosa guilty of making a terroristic
threat and assessed punishment at incarceration for 150 days. See Tex. Penal Code Ann.
§ 22.07(a)(1) (West 1994). Appellant raises two issues on appeal, the second of which is that he
did not waive his right to trial by jury. The State confesses error in this regard, and we will
accordingly reverse and remand for a new trial.

We will address appellant's first issue because it is likely to recur at the new trial. 
Appellant contends that all evidence regarding the terroristic threat to the complainant police
officer should have been suppressed because it was the fruit of an "illegal remainder" on his
premises by the officer. We will review the trial court's ruling on a de novo basis. See Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Austin police officer Mary Ann Stone and her partner were dispatched to an
apartment in response to a 911 call reporting a disturbance at that location. Stone testified that
the caller "said there were people in the apartment, and they were gone now, but he did not know
whether they were in the parking lot, and he didn't have any descriptions." When the officers
knocked on the apartment door, they heard "mumbling" from inside. The officers announced
themselves in English and Spanish. There was more mumbling, then the door opened. The man
who opened the door was appellant. He appeared to be intoxicated and was putting on a shirt. 
He stepped back in a manner the officers interpreted as granting them permission to enter.

The officers entered the small efficiency apartment. The room was in disarray,
with "clothing and different objects on the floor, the bed all messed up." Stone asked appellant
in Spanish if anyone else was in the apartment. Appellant replied, "Nothing, they're all gone." 
Stone continued speaking to appellant in an effort to determine "if he's hurt, if there is someone
else in the apartment, I'd like to know what happened, if there was an assault, did I need to write
up a report, or what else had occurred that made him call 911 . . . ." Appellant became angry
and demanded that the officer speak to him in English. By this time, he was standing behind the
bed. In a loud voice, appellant said, "I can follow you into the parking lot and shoot you in the
face, that would make my day." At this point, the officers had been inside the apartment for
about a minute.

Appellant's threat placed Stone and her partner in fear for their safety because they
could not see if appellant had a weapon behind the bed where he was standing. They backed out
of the apartment and began to walk to their patrol car. Appellant opened the apartment door and
shouted, "How about I shoot you, I shoot you in the face."

Appellant does not contend that he had been arrested or otherwise seized, or that
his threatening statements to the officer were the product of unlawful custodial interrogation. 
While he suggests that the officers unlawfully entered his apartment, he did not make this
argument in the trial court and therefore did not preserve it for review. See Tex. R. App. P.
33.1(a)(1). Appellant primarily argues, as he did below, that the officers' purpose for being in
his apartment ended when they saw no other persons, and no blood or other sign of injury. 
Appellant asserts that his threatening statements "were the fruit of police officers illegally
remaining in his apartment for more than a minute without any reasonable suspicion, much less
probable cause, that anything illegal was occurring."

Appellant argues by analogy to a temporary investigative detention. A police
officer who reasonably suspects that a person may be involved in criminal activity may detain that
person for further investigation, but the detention may last no longer than necessary to effectuate
the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983); Davis v. State, 947
S.W.2d 240, 243-45 (Tex. Crim. App. 1997). The detaining officer must diligently pursue her
investigation using the least intrusive means reasonably available, and must end the detention
when her suspicion is shown to be unfounded. See Davis, 947 S.W.2d at 245-46.

Assuming that the analogy to a temporary detention is a valid one, we hold that
Officer Stone and her partner did not remain in appellant's apartment for an unreasonably long
period of time under the circumstances. Viewed in the light most favorable to the court's ruling,
the evidence shows that the officers had been in appellant's apartment about one minute when he
made his first threat to shoot Stone in the face. Approximately one minute is not an unreasonable
amount of time to investigate a 911 disturbance call, especially when the investigating officers find
an obviously intoxicated man at the suspect location and observe signs of a possible altercation. 
Moreover, even if appellant's first threat were somehow the product of the officers' presence in
his apartment, his argument does not apply to the second threat, which was made after the officers
left and were returning to their vehicle. The trial court did not err by overruling appellant's
motion to suppress the evidence of appellant's threats to the officer.

Having sustained appellant's second issue on the State's confession of error, we
reverse the judgment of conviction and remand the cause for a new trial.




 


 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Remanded

Filed: November 12, 1999

Do Not Publish



bance at that location. Stone testified that
the caller "said there were people in the apartment, and they were gone now, but he did not know
whether they were in the parking lot, and he didn't have any descriptions." When the officers
knocked on the apartment door, they heard "mumbling" from inside. The officers announced
themselves in English and Spanish. There was more mumbling, then the door opened. The man
who opened the door was appellant. He appeared to be intoxicated and was putting on a shirt. 
He stepped back in a manner the officers interpreted as granting them permission to enter.

The officers entered the small efficiency apartment. The room was in disarray,
with "clothing and different objects on the floor, the bed all messed up." Stone asked appellant
in Spanish if anyone else was in the apartment. Appellant replied, "Nothing, they're all gone." 
Stone continued speaking to appellant in an effort to determine "if he's hurt, if there is someone
else in the apartment, I'd like to know what happened, if there was an assault, did I need to write
up a report, or what else had occurred that made him call 911 . . . ." Appellant became angry
and demanded that the officer speak to him in English. By this time, he was standing behind the
bed. In a loud voice, appellant said, "I can follow you into the parking lot and shoot you in the
face, that would make my day." At this point, the officers had been inside the apartment for
about a minute.

Appellant's threat placed Stone and her partner in fear for their safety because they
could not see if appellant had a weapon behind the bed where he was standing. They backed out
of the apartment and began to walk to their patrol car. Appellant opened the apartment door and
shouted, "How about I shoot you, I shoot you in the face."

Appellant does not contend that he had been arrested or otherwise seized, or that
his threatening statements to the officer were the product of unlawful custodial interrogation. 
While he suggests that the officers unlawfully entered his apartment, he did not make this
argument in the trial court and therefore did not preserve it for review. See Tex. R. App. P.
33.1(a)(1). Appellant primarily argues, as he did below, that the officers' purpose for being in
his apartment ended when they saw no other persons, and no blood or other sign of injury. 
Appellant asserts that his threatening statements "were the fruit of police officers illegally
remaining in his apartment for more than a minute without any reasonable suspicion, much less
probable cause, that anything illegal was o