Opinion filed January 25, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed January 25, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00082-CR 

                                                    __________

 

                                         SHANNON DAY, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                          On
Appeal from the 70th District Court

                                                           Ector County, Texas

                                                 Trial
Court Cause No. A-31,650

 



 

                                                    O
P I N I O N

 

Shannon
Day appeals his conviction by a jury of the offense of possession of heroin in
an amount of more than one but less than four grams.  The trial court, having found two enhancement
allegations to be true, assessed his punishment at thirty years in the Texas
Department of Criminal Justice, Institutional Division.  Day contends in a single point of error that
the trial court erred by refusing to suppress the evidence discovered as the
result of an illegal search of his vehicle. 
We affirm.  








We
review the trial court=s denial of a motion to suppress for an
abuse of discretion.  Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999). 
There is an abuse of discretion when the trial court=s decision is so clearly wrong as to lie
outside that zone within which reasonable persons might disagree.  Cantu v. State, 842 S.W.2d 667, 682
(Tex. Crim. App. 1992); Haas v. State, 172 S.W.3d 42, 49 (Tex. App.CWaco 2005, pet. ref=d).

We are
to give the trial court=s findings of fact almost total
deference.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex.
Crim. App. 2000).  In the absence of
explicit findings of fact, we assume that the trial court made whatever
appropriate implicit findings the record supports.  Id.
at 328.  We review the application of
relevant law to the facts de novo.  Id. at 327.

Steve
Kelly, a corporal with the Odessa Police Department, testified that he stopped
Day for two traffic violations B failing to use his turn signals and
failing to yield the right-of-way after stopping at a stop sign.  He indicated that he first observed Day=s vehicle parked in front of a residence
that was known, from past experience, as Aa narcotics residence for heroin.@  He
said, AWe=ve dealt with it several times, that
residence, in reference to heroin.@  He
related that there had been past search warrants and Athat kind of thing@ at the residence and that heroin had been
located. 

Corporal
Kelly indicated that, after asking Day for his license and insurance, he had
Day step out of his vehicle and explained why he was stopped.  He said he then asked Day for consent to
search his person and his vehicle.  He
related that Day consented for him to search his person but not his
vehicle.  Corporal Kelly recalled that
Day was a little bit nervous and that he kept fidgeting around.  He said that he told Day  a couple of times to calm down.  Corporal Kelly testified that he decided to
call for canine backup as soon as Day refused consent to a search of his
vehicle.  He acknowledged that Day had a
valid driver=s license and that nothing was found during
the search of his person.

On
cross-examination, Corporal Kelly testified that he saw Day=s vehicle at the house for two to three
minutes but that he did not know if Day had been there a long time or had come
and stayed just for that period of time. 
While Corporal Kelly acknowledged that it had probably been six months
since he had searched the house, he related that Awe=ve stopped traffic leaving there and gotten
heroin off of traffic leaving the house.@  He
related that, the night before he stopped Day, Awe
got a car leaving with heroin@ and that the week before other members of
his unit got a car leaving and got heroin out of it.








Corporal
Kelly indicated that, after he stopped Day, he was asking Day where he was
coming from and where he was headed.  He
stated that he explained to Day that the house that he parked in front of was Aa known narcotics residence.@  He
acknowledged that what he was talking to Day about was not related to the
traffic stop.  He testified that Day was
being detained but was not under arrest at that point.  He said he could not recall if he had any
intention of issuing Day a citation for the traffic stop.  He related that at that point he was
detaining Day because he Awas changing it into a narcotics
investigation.@  He
insisted that Day could not give him any particular reason why he was at the
house in question.  He stated that he
believed there was a suspicion of narcotics activity.  Corporal Kelly indicated that he stopped Day
about 6:36 p.m. and that the Canine Unit arrived at approximately 7:04 p.m.

In
response to a question from the trial court, Corporal Kelly testified that the
Canine Unit did an open air search around Day=s
vehicle and that no one entered the vehicle until the dog alerted to the
vehicle.  He acknowledged that the dog
went into the vehicle once it Ahit on the vehicle.@

Jesse
Garcia, another corporal with the Odessa Police Department, testified that Day
was nervous and shaking after Corporal Kelly had asked him to get out of his
car.  Andy Blackburn, an officer with the
Odessa Police Department assigned to the Canine Unit, testified that he was
called out by the Street Crimes Unit to do an open air search around Day=s vehicle. 
He said that, after the dog responded to the driver=s door, he opened the door and let the dog
into the vehicle.  He related that the
dog then alerted to a paper towel in the cup holder where he found a quantity
of heroin.  He said he arrived at the
scene about 7:00 p.m.

Day does
not contest the validity of the initial stop for a traffic violation but
contends that his detention, from the time Corporal Kelly turned the traffic
stop into a narcotics investigation until the Canine Unit arrived, was an
illegal seizure.  If a valid traffic stop
evolves into an investigative detention concerning other criminal activity so
that a canine sniff can take place, reasonable suspicion is required to prolong
the detention.  Haas, 172 S.W.3d
at 52.  Day=s
vehicle was parked at a residence that Corporal Kelly characterized as a Anarcotics residence,@ noting that just the day before heroin had
been found on someone coming from the residence.  Day had been unable to offer any explanation
as to why he had been at that residence, and he was shaking and acting so
nervous that Corporal Kelly had tried to calm him down.  We hold that under the circumstances Corporal
Kelly had a reasonable suspicion that justified Day=s detention until the Canine Unit arrived
at the scene.  See Haas, 172
S.W.3d 42.








Day
relies on several cases to support his view that his detention pending the
arrival of the Canine Unit was unreasonable and, therefore, violative of the
Fourth Amendment.  These primarily
include Ohio v. Robinette, 519 U.S.
33, 45 (1996); Florida v. Royer, 460 U.S. 491, 500 (1983);  United States v. Brigham, 382 F.3d 500
(5th Cir. 2004) (en banc); Kothe v. State, 152 S.W.3d 54, 65 (Tex. Crim.
App. 2004); and Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim. App.
1997).  We have examined each of these
authorities and find some to be distinguishable, some supportive of our
opinion, and some irrelevant.

In Royer,
the Court found that officers had a reasonable suspicion sufficient to justify
a temporary detention of the defendant where he had a discrepancy in his
airline ticket and baggage tags in that they did not match his driver=s license, which bore his correct name; he
paid cash for a one-way ticket; he did not put an address and phone number on
his baggage identification; he paid in cash for his ticket with a large number
of bills; and he appeared pale and nervous, looking around at other
people.  Royer, 460 U.S. at
502.  The Court held that, when he was
taken to a separate room in the airport where he was alone with two police
officers who had obtained his luggage without his consent, the detention was
transformed into an arrest.  Id.  Subsequently, the Court concluded that
there was not probable cause for such an arrest.  Id.
at 507.  Interestingly, the Court
suggested that officers, rather than arresting the defendant, could have held
him until a dog was obtained to sniff his luggage.  Id.
at 505-06.  Also, in the case at bar,
officers did not take Day or his property to a room containing police
officers.  We find that Royer supports
and is not inconsistent with our opinion.

In Davis, the
defendant was originally stopped for suspicion of driving while intoxicated.  Davis,
947 S.W.2d at 241.  After officers
determined that the defendant was not intoxicated, they detained his automobile
pending the arrival of a Canine Unit.  Id.  The court held that there were no facts to
justify a reasonable suspicion necessary to detain the vehicle after it had
been determined that the defendant was not intoxicated:  the officers had released the defendant, knew
that the vehicle was not stolen, and had not detected an odor of drugs or
alcohol.  Id. at 245-46.  Unlike the case at bar, in Davis there was no indication that the
defendant had come from a location known to be a distribution point for
narcotics.








In Kothe,
the court held that a police officer=s decision to return to his vehicle and
wait a few minutes for the result of a warrant check before releasing the
defendant, after determining that he was not intoxicated, was reasonable as a
matter of substantive Fourth Amendment law. 
Kothe, 152 S.W.3d at 66. 
We find that Kothe supports and is not inconsistent with this
opinion.  

In Brigham,
the court concluded that evidence of liquid codeine found after a consensual
search was admissible because a police officer who stopped a vehicle for a
traffic violation acted reasonably in detaining the occupants for nearly thirty
minutes where circumstances suggested the car might be stolen and where the
occupants had fake IDs and gave conflicting stories as to their travel.  Brigham, 382 F.3d at 504-05, 509.  We find that Brigham supports and is
not inconsistent with our opinion.  The
only difference suggested by Day is that in Brigham the officer was
waiting for ID checks, whereas in the case at bar the officer was waiting for a
Canine Unit.  There is nothing in Brigham
that suggests the result would have been different had the officer in that
case waited a reasonable time for a Canine Unit.  Such a unit was unnecessary in Brigham because
the search in that case was consensual.  Id. at
505.

In Robinette,
the Court held that a police officer who asked for a consent to search during a
traffic stop after the officer no longer had reasonable suspicion to justify
continued detention did not need to tell the person stopped that he was free to
go before obtaining consent for a search. Robinette, 519 U.S. at 36,
39-40.  This opinion does not resolve the
issue before us.  As we have noted, there
were no facts in Robinette supporting any continued detention, and the
defendant in that case consented to the search. 
As we have previously noted, in the case at bar there were facts,
including the defendant=s nervousness and his failure to give any
explanation as to why he was at a residence known to be a narcotics
distribution point just prior to the stop, that supported his detention until
the arrival of the Canine Unit.








Day
suggests that the trial court erred by denying his motion because his testimony
that he was never in the house but had only been visiting a friend in a park
across the street was uncontroverted. 
Day did not testify at the hearing on the motion to suppress.  Rather, he testified at trial after the
heroin had been admitted into evidence. 
We will only review evidence that was before the trial court when it was
asked to render a decision on this matter. 
Jones v. State, 944 S.W.2d 642, 650-51 (Tex. Crim. App.
1996).  Even if we were to consider Day=s testimony in evaluating this point on
appeal, we note that he admitted that he parked at the residence in question
and that the friend he visited in the park was the occupant of that
residence.  He also acknowledged that he
had a prior felony conviction and that he could not say how someone could have
at least $260 worth of drugs in their vehicle leaving a place known to
distribute heroin and not know that it was there in the cup holder.  Even if the trial court were required to
believe Day, which it was not, we still maintain the record reflects evidence
in support of the trial court=s implicit finding that there was
reasonable suspicion to justify detaining Day until the Canine Unit
arrived.  We overrule Day=s sole point on appeal.  

The
judgment is affirmed.

 

PER CURIAM 

 

January 25, 2007

Do not publish.  See Tex.
R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

Strange, J., and Hill, J.[1]











     [1]John
G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth
sitting by assignment.