# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00832-CR

The State of Texas, Appellant

v.

Jose Angel Ibanez, Appellee

## FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
## NO. 096798, HONORABLE ANNA M. BOLING, JUDGE PRESIDING

## DISSENTING OPINION

This case turns on the legal question of whether the detaining officers had reasonable suspicion to believe that Ibanez was, had been, or soon would be engaged in criminal activity so as to justify his continued detention. Viewing the evidence in its totality, I would hold that the officers had reasonable suspicion to continue to detain Ibanez and that the trial court abused its discretion in concluding otherwise. Therefore, I must respectfully dissent.

"Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)). A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id*.; *see Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). This standard looks to whether there was an

objectively justifiable basis for the detention based on the totality of the circumstances confronting the detaining officer. *See Derichsweiler*, 348 S.W.3d at 914. "[T]hose circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id*. Additionally, "the relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

On the other hand, "the facts invoked to justify an investigative detention must support more than a mere hunch or good-faith intuition that criminal activity is afoot." *Derichsweiler*, 348 S.W.3d at 916. To support a finding of reasonable suspicion, the specific facts articulated by the detaining officer "must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). However, there is no requirement that the officer suspect that a particular offense is being committed; it is enough if the facts "suggest that *something* of an apparently criminal nature is brewing." *Derichsweiler*, 348 S.W.3d at 916-17 (emphasis in original).

In this case, it is undisputed that the initial traffic stop was valid. And it is also undisputed that the officers were justified in suspecting that the driver of the vehicle, Reyes, was engaged in criminal activity—he had falsely identified himself to the officers three times. The disputed issue is whether, after the driver of the vehicle had been arrested, the officers were justified in continuing to detain Ibanez.

As the majority observes, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500

(1983); *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). However, if during a valid investigative detention the officer develops reasonable suspicion that another offense has been or is being committed, prolonged or continued detention is justified. *See Davis*, 947 S.W.2d at 244-45; *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979); *Harper v. State*, 349 S.W.3d 188, 191-92 (Tex. App.—Amarillo 2011, pet. ref'd); *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd); *Hill v. State*, 135 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *Powell v. State*, 5 S.W.3d 369, 377-79 (Tex. App.—Texarkana 1999, pet. ref'd). As with the initial detention, the continued detention is justified only if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the detainee was involved in criminal activity. *See Hill*, 135 S.W.3d at 269.

I would conclude that the record contains such facts. Officer LaRocque testified that when he spoke with Ibanez during the traffic stop, Ibanez claimed responsibility for the vehicle, stating that the vehicle and trailer did not belong to him but that "the truck belonged to his brother in McAllen and that the trailer was rented." Ibanez also told LaRocque that "he had permission to borrow the truck and trailer and was responsible for everything in it." According to LaRocque, Ibanez "took full responsibility for the situation and circumstance" and stated that he and Reyes "were traveling to New Mexico to purchase a vehicle." Also, on the video, Ibanez can be heard telling LaRocque that he and the driver had met in a club approximately four months ago, that the driver did mechanical and other work for Ibanez, and that the driver had offered to "help out" Ibanez on his trip by driving and "co-piloting" the vehicle. However, Ibanez also told LaRocque that he could not recall the driver's last name. LaRocque could have rationally inferred from this and

3

other evidence that Ibanez was connected to or even responsible for the driver's deceptive and suspicious behavior.

LaRocque additionally testified that although Ibanez claimed that the truck "belonged to his brother," the vehicle was actually "registered to a woman" by the name of Cecilia Ibanez. Although this woman had the last name Ibanez, LaRocque testified that Ibanez was a "common name" that did not necessarily indicate that the woman was married to Ibanez's brother. Thus, LaRocque could have rationally inferred from this evidence that Ibanez was being deceptive or at the very least not providing full disclosure as to the ownership of the vehicle.

LaRocque also found it suspicious that Ibanez claimed that he and Reyes were traveling to New Mexico when they were in fact headed north on I-35 well beyond a highway that goes to New Mexico. LaRocque explained, "[Ibanez] stated he was headed to I-10 westbound to go to New Mexico, and yet he's on I-35 in San Marcos; that's a good half-hour, 45 minutes off course."[1] When LaRocque asked Ibanez to explain why they were "so off course," he recalled Ibanez telling him that "they were lost or missed their turn."

LaRocque further testified that I-35 is a major drug artery for running drugs from Mexico; that in his experience, drug runners "commonly" use vehicles that are not registered to them; that the driver of the vehicle exhibited the characteristics of a drug runner; and that both the driver and the passenger told him that they were going to New Mexico even though they were headed in the wrong direction. From these facts, based on his training and experience, LaRocque believed that there were drugs in the vehicle. LaRocque summarized the reasons for his suspicion as follows:

---

[1] On the video, one of the officers can be heard questioning why they were even on I-35, when Highways 83 and 281 were more direct routes from McAllen to I-10.

Actually the vehicle was coming from a known drug location, coming from South Texas, the border of Mexico, was traveling north, the driver and passenger off course. The vehicle and trailer didn't belong to them. The driver was extremely nervous and gave us fictitious information, so our suspicions were high that some kind of criminal activity was going on.

Although any one of the above facts in isolation might not appear suspicious, we are to consider the evidence in its totality. When considering the evidence in that light, I would conclude that the specific facts articulated by Officer LaRocque, combined with rational inferences from those facts, provided him with reasonable suspicion to continue to detain Ibanez. The totality of the evidence "shows unusual activity," "connects the detainee to the unusual activity," and provides "some indication that the unusual activity is related to crime." *See Martinez*, 348 S.W.3d at 923. Accordingly, I would reverse the suppression order of the trial court and remand for further proceedings. Because the majority does not, I respectfully dissent.[2]

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Filed: July 6, 2012

Do Not Publish

---

[2] The majority also addresses the issue of whether in the absence of reasonable suspicion, the continued detention was justified by Ibanez's consent to search the vehicle. Because I would conclude that there was reasonable suspicion to prolong the detention, I would not address this issue.