TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00722-CR







William Baptiste Bloys, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT

NO. 4888, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 William Baptiste Bloys appeals the trial court's denial of his motion to suppress
evidence obtained from the search of his vehicle during a routine traffic stop. He pleaded nolo
contendere to the charge of possession of a controlled substance and received a five-year sentence,
probated to seven years plus a fine, costs, and community service. See Tex. Health & Safety Code
Ann. § 481.115 (West 2003). On appeal, he contends that the search violated his rights against
unreasonable search and seizure as protected by the United States and Texas Constitutions. See U.S.
Const. amend IV; Tex. Const. art. I, § 9. We overrule appellant's sole issue and affirm the judgment
of conviction.


BACKGROUND

 Appellant was pulling a trailer with his van and John Pierce was his passenger when
Menard County Sheriff's Deputy Jeff Whitson stopped him because of the trailer's nonfunctional
taillight and license-plate light. See Tex. Transp. Code Ann. § 547.322(a), (f) (West 1999). After
stopping appellant, Whitson asked him whether he had ever been arrested, or was carrying any
weapons or illegal drugs. Although appellant initially answered each of these questions negatively,
he then acknowledged having a rifle and also a handgun. Although Whitson requested appellant's
consent to search, appellant did not consent to a search of his vehicle. But Whitson observed signs
consistent with drug use, including appellant's trembling extremities and failure to maintain eye
contact when questioned on the subject. Whitson attempted to summon a canine unit for further
investigation, but the dispatcher estimated it would be two hours before the dog could be brought
to the scene. Believing that he could not justifiably detain appellant for two hours, Whitson did not
charge appellant and released him with a warning ticket for the traffic violation.

 After releasing appellant, Whitson called McCulloch County Sheriff's Deputy Jason
Corbell to advise him that appellant would be traveling through McCulloch County, that he was
towing a trailer with a broken taillight and license-plate light, that Whitson had observed appellant
with a pistol and a rifle, and appellant had "indicators" of possession of illegal drugs. When Corbell
observed appellant's vehicle pass him in the opposite direction, Corbell made a u-turn and stopped
appellant. As Corbell approached the vehicle, appellant exited the car and met Corbell about
halfway between the two cars. When asked if he had any weapons in the car, appellant answered
affirmatively. When Pierce was asked the same question he responded, "I'm not sure." Corbell then
asked appellant if he had ever been arrested. Appellant confirmed that he had been previously
arrested for methamphetamine and weapons charges. When asked about the presence of illegal drugs
in the vehicle, appellant answered negatively, but when asked specifically about methamphetamine,
appellant looked down at his feet and did not maintain eye contact while answering. When Corbell
asked Pierce whether there were any illegal drugs in the vehicle, he answered, "No, not really." 
Pierce then consented to a search of his person. As a result of the search, Corbell found the wrapper
of a hypodermic needle in Pierce's pocket, and "track marks" from repeated hypodermic drug use
on his arms, including a recent injection wound still marked with blood. Pierce admitted to having
"shot up" that morning.

 Based on the evidence of drug use, Corbell continued questioning appellant and
Pierce and phoned Deputy Adam Hernandez for back-up, due to the presence of weapons. Corbell
conducted a pat-down search of appellant for weapons, but did not find any. When Hernandez
arrived, he performed another pat-down on appellant, and did not find anything.

 Approximately ten minutes after the initial stop, Corbell called Deputy Tye Tully and
requested the canine unit. Tully arrived with the dog thirty or forty minutes later. While inspecting
the vehicle from the outside, the dog "alerted" to the driver's and passenger's doors. At this point,
appellant stated, "Y'all can search the vehicle." Inside the van, Hernandez discovered a scale with 
what appeared to be methamphetamine residue on it. After Hernandez conducted a more thorough
search of appellant's person, he discovered a plastic bag containing approximately forty-nine ounces
of methamphetamine in appellant's pants. Appellant was arrested and charged with felony
possession of a controlled substance.

 Following a hearing, the trial court denied appellant's motion to suppress the evidence
obtained from the search of his vehicle. The trial judge certified appellant's right to appeal the
evidentiary ruling, and made the following findings of fact:


1. Defendant was stopped by a McCulloch County Sheriff's deputy for defective
equipment and a missing trailer license plate.


2. Defendant and Defendant's passenger appeared very nervous during the stop and
displayed indicators of deception when asked about narcotics.


3. Defendant admitted to previous Methamphetamine and weapons arrests.


4. Defendant's passenger consented to a search of his person yielding a
hypodermic needle and "track marks" on his arm.


5. Defendant admitted to the officer that he was unlawfully carrying a handgun in
his console.


6. Defendant refused consent to search his vehicle, but stated to the officer, "go
ahead and get the dog to search the vehicle."


7. A free-air search of the vehicle yielded at least one positive alert on the vehicle.

 

8. A search of the vehicle found weight scales with apparent methamphetamine
residue on them, and a handgun was found in the vehicle's console.


9. Defendant was patted down, and a bulky object in the crotch area of the
Defendant was detected. The object was removed and was determined to be two
plastic bags containing 49 grams of methamphetamine.



Based upon his findings of fact, the trial court found that the officers had reasonable suspicion for
the traffic stop and appellant's continued detention based upon the totality of the circumstances and
probable cause to arrest based upon the possession of the handgun.



ANALYSIS


 In his sole point of error, appellant argues that the trial court erred in denying the
motion to suppress the evidence because the deputies illegally expanded the search of his vehicle and
the continued detention was therefore unreasonable.


Standard of Review


 We review a trial court's ruling on a motion to suppress for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). A reviewing court grants almost
total deference to the trial court's determination of historical facts and mixed questions of law and
fact that turn on the evaluation of the credibility and demeanor of witnesses. Guzman v. State, 955
S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We review questions of reasonable suspicion and
probable cause de novo. Id. at 87.


Reasonable Suspicion and Investigative Detention


 The permissible extent and duration of a search pursuant to a routine traffic stop is
limited by the reasonableness requirement of the United States and Texas Constitutions. See U.S.
Const. amend. IV; Tex. Const. art. I, § 9; see also Terry v. Ohio, 392 U.S. 1, 19-20 (1968); Davis
v. State, 947 S.W.2d 240, 242-45 (Tex. Crim. App. 1997). In Hulit v. State, the court of criminal
appeals held that the protections of article I, section 9 of the Texas Constitution are no greater than
those of the federal constitution, and may be less. 982 S.W.2d 431, 436-37 (Tex. Crim. App. 1998). 
Thus, we consider the broader protection of the federal constitution.

 Police searches are reviewed under a two-prong test: first, the officer's action must
be justified at its inception, and second, the search must be reasonably related in scope to the
circumstances that justified the initial interference. Terry, 392 U.S. at 19-20; Davis, 947 S.W.2d at
242. Under the first prong, the officer must be able to point to specific and articulable facts which,
taken together with rational inferences from those facts, lead the officer to conclude that the person
detained is, has been, or soon will be engaged in criminal activity. Brother v. State, No.
PD-1820-02, 2005 Tex. Crim. App. LEXIS 983, at *4 (Tex. Crim. App. June 29, 2005); Davis, 947
S.W.2d at 242 (citing Terry, 392 U.S. at 21). The second prong requires that the search "must be
strictly circumscribed by the exigencies which justify its inception." Davis, 947 S.W.2d at 243
(citing Terry, 392 U.S. at 25-26). Once the reason for the stop has been satisfied, the stop may not
be used as a "fishing expedition for unrelated criminal activity." Id. at 243 (citing Ohio v. Robinette,
519 U.S. 33, 41 (1996) (Ginsburg, J., concurring)).

 Searches that satisfy both prongs of this test establish the officer's "reasonable
suspicion" for the search. Terry, 392 U.S. at 20. Reasonable suspicion is judged by an objective
standard, not the subjective intent of the officer, and must be based on the totality of the
circumstances under which the search occurred. Garza v. State, 43 S.W.3d 527, 530 (Tex. Crim.
App. 2001). "Reasonableness" must be judged from the perspective of a reasonable officer at the
scene, rather than with the advantage of hindsight. Rhodes v. State, 945 S.W.2d 115, 118 (Tex.
Crim. App. 1997).


Probable Cause

 Probable cause is present when the totality of the facts and circumstances within a
police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude
that the suspect had committed or was committing an offense. Goodson v. City of Corpus Christi,
202 F.3d 730, 740 (5th Cir. 2000); see also Guzman v. State, 955 S.W.2d at 87. Once officers have
probable cause to arrest, they are justified in conducting a search incident to a lawful custodial arrest. 
State v. Ballard, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999).


Probable Cause Based on Weapons Violation


 Under the second prong of Terry, appellant contends that the deputies' actions should
have been limited to investigating and following up on the basis for the initial traffic stop--the
broken taillight--and that any questions regarding drugs or weapons exceeded the permissible scope
of the detention. Appellant contends that the trial court erred when it denied his motion to suppress
evidence obtained during the stop on the basis of Corbell's and Hernandez's "reasonable suspicion,"
stating that, after the initial detention and questioning, probable cause was required; reasonable
suspicion was not enough. In the course of the initial stop, appellee admitted an actual criminal
violation, i. e., unlawfully carrying a handgun, and Whitson formed a reasonable suspicion of other
criminal activity. Terry requires only reasonable suspicion, not probable cause, to justify a frisk for
weapons pursuant to a routine stop. 392 U.S. at 30-31. While probable cause was required for the
vehicle search and the search of appellant that actually led to the discovery of the methamphetamine,
appellant's admission that he was carrying a handgun in his vehicle was sufficient to give probable
cause for his arrest early on at either of the two stops, and the trial court so found. See Tex. Pen.
Code Ann. § 46.02(a) (West 2003); (1) see also Christian v. State, 686 S.W.2d 930, 933 (Tex. Crim.
App. 1985) (language "on or about his person" in section 46.02 construed to include "at least the
interior of an automobile"); Hazel v. State, 534 S.W.2d 698, 700 (Tex. Crim. App. 1976) (proof that
appellant's pistol was on floorboard of automobile established that he carried it on or about his
person); Hendricks v. State, 2002 Tex. App. LEXIS 6247, at *2 (Tex. App.--Dallas 2002, pet. ref'd)
(not designated for publication); Contreras v. State, 853 S.W.2d 694, 696 (Tex. App.--Houston [1st
Dist.] 1993, no writ) (carrying on or about person includes interior of one's vehicle). Once the
deputies had probable cause to arrest appellant, they were justified in conducting a search incident
to a lawful custodial arrest. Ballard, 987 S.W.2d at 892; Williams v. State, 726 S.W.2d 99, 100-01
(Tex. Crim. App. 1986). Such a search may be conducted either before or after the formal arrest. 
Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); Ballard, 987 S.W.2d at 892; Williams, 726 S.W.2d
at 101. Thus, the deputies' search of appellant's person and vehicle were justified by the probable
cause they had to arrest him as soon as they discovered that he was illegally carrying a handgun in
his car. We will nonetheless address appellant's complaint that the scope of the detention exceeded
that permitted by Terry.


Reasonable Suspicion Due to Totality of Circumstances


 Immediately upon stopping appellant, Whitson observed that appellant was extremely
nervous, was trembling, and had difficulty maintaining eye contact during questioning. This gave
Whitson a reasonable suspicion that criminal activity was afoot and justified further questioning
beyond the scope of the initial purpose of the stop. Appellant then acknowledged he was carrying
a handgun in the car. Although he was not charged with that offense, his continued evasive
responses to Whitson's questions justifiably increased Whitson's suspicion. After appellant denied
consent to search his vehicle, Whitson did not believe he could detain him long enough to bring in
the canine to search for drugs.

 Whitson based his tip to Corbell on the information he gathered during questioning
that was justified by his reasonable suspicion. Whether Corbell's initial traffic stop was based on
the broken taillight, on Whitson's tip that appellant was armed, or both, the trial court found it
reasonable under the totality of the circumstances, and we agree. A tip possessing sufficient indicia
of reliability may provide the reasonable suspicion necessary to justify an investigative detention. 
Alabama v. White, 496 U.S. 325, 326-27 (1990); Carmouche v. State, 10 S.W.3d 323, 328 (Tex.
Crim. App. 2000). Here the tip was provided by a member of a neighboring county's sheriff's
department, and it was reasonable for Corbell to conclude that the tip was reliable.

 Thus, Corbell had reasonable suspicion for his original stop, whether based on his
observation of appellant's traffic violation or the tip provided by Whitson. In particular, this tip
provided Corbell with a basis for reasonable suspicion other than the broken taillight, justifying his
initial line of questioning regarding weapons and drugs. When appellant admitted that he had a
handgun in the car, as well as an arrest record, Whitson already had probable cause to arrest
appellant for this violation or at least to question him further. Appellant's evasive manner when
asked about the presence of methamphetamine, coupled with Pierce's equivocal answer when asked
the same question, provided reasonable suspicion that was sufficient to justify the initial pat-downs
of both men.

 These pat-downs were within the limitations contemplated by Terry and Davis. They
sought only to uncover other possible weapons about which the deputies were justifiably concerned
for their own safety after discovering a rifle and a handgun in the van. The pat-down of Pierce then
uncovered evidence of illegal drug use. Thus, the legality of the vehicle search was not dependent
on the results of the canine alert, because Corbell already had probable cause to search appellant's
vehicle when he discovered the evidence of illegal drug use on Pierce and the illegally concealed
weapon on the front seat of the vehicle.

 Discovery of the scales in the car only bolstered the basis for Corbell's and
Hernandez's reasonable suspicion of criminal activity and justified the decision to search appellant's
person more extensively than before. This was not a "fishing expedition," but an investigation that
was limited at each stage by the reasonable suspicion that the observed facts justified. The
investigation progressed as evidence continued to be revealed.

 Appellant relies on Davis to assert that the deputies exceeded the limits of an
investigative detention. While Davis stands for the general proposition that detentions and searches
must be limited in time and scope, the facts of that case are distinguishable from those before us. 
The motorist in Davis was detained after an initial stop for suspicion of driving while intoxicated. 
Davis, 947 S.W.2d at 241. The investigating officers determined that Davis was not intoxicated. 
Id. The officers continued to detain Davis and searched his vehicle despite his refusal to give
consent for them to do so. Id. The officers who searched Davis testified that they formed their
suspicions based on the following: (i) it was approximately 1:00 a.m.; (ii) Davis was driving a
borrowed vehicle, which was confirmed not to be stolen; (iii) Davis was not dressed "as a
businessman," which he claimed to be; and (iv) Davis appeared nervous. Id. at 247-48 (Mansfield,
J., concurring). The court of criminal appeals stated that these alleged justifications for reasonable
suspicion were insufficient to uphold the search. Id. at 246. Indeed, the officers told Davis that he
was free to go, which the court took as the officers' realization that they lacked probable cause or
reasonable suspicion to justify detaining him further. Id. at 245. The officers informed him that they
would detain his vehicle to perform a further search--which effectively prevented Davis from
leaving because the vehicle was his sole means of transport. Id. at 246.

 Davis's situation contrasts with appellant's because appellant was initially stopped 
on the basis of an actual traffic violation as well as a tip, not mere suspicion. Within moments of
the initial stop, appellant exhibited behavior that preceded a series of "specific and articulable facts
which, taken together with rational inferences from those facts, reasonably warrant[ed] the continued
intrusion." Brother, 2005 Tex. Crim. App. LEXIS 983, at *4; Davis, 947 S.W.2d at 242. 
Appellant's and Pierce's contradictory and ambiguous responses to questioning, appellant's extreme
trembling, and Pierce's track marks distinguish this case from Davis's mere "nervousness." Each
of these behaviors and observations gave rise to the officers' heightened level of reasonable
suspicion--admission of an ongoing criminal offense, the illegal carrying of a handgun in the
vehicle, observation of evidence of recent illegal drug use along with the scales containing possible
drug residue--culminating in probable cause for arrest when the concealed contraband was found 
on appellant's person. And here, the deputies had probable cause to arrest appellant for the weapons
violation as soon as they confirmed his possession of the illegally concealed handgun.

 Terry and Davis require officers to use the least intrusive methods when conducting
a traffic stop based only on their observation of a minor traffic violation. However, when the officers
making the stop observe activity which gives rise to a reasonable suspicion of further criminal
activity, the first prong of Terry is satisfied, and a continuation of the investigation is justified, with
a scope which may be broader than the one which was justified by the original stop, and which
uncovered the new basis for increased suspicion. This chain of reasonable inferences extending an
investigation does not so far remove the final product of the search from the initial reason for the
stop as to render the product of that search inadmissible or the search unreasonable. Instead, this
graduated method encourages law enforcement officers to take a measured approach and examine
the totality of the circumstances, as they uncover evidence incrementally and their suspicions are
confirmed or increased, rather than rushing in based on an insufficiently formulated suspicion not
reasonably implied by the evidence so far discovered. It also allows officers to stop such an
investigation at any point if their continued investigation fails to reveal any more incriminating
evidence.

 In sum, Whitson stopped appellant for a traffic violation. Appellant exhibited signs
of drug involvement and Whitson discovered that appellant was illegally concealing a weapon. 
Corbell and Hernandez, acting on a reliable tip from Whitson, had reasonable suspicion of the
weapons violation. Once they confirmed the presence of the illegal weapon, they had probable cause
to arrest appellant for that offense. The search conducted after that point was justified as incident
to a lawful custodial arrest. During the stop, Corbell and Hernandez incrementally discovered
further evidence supporting their reasonable suspicion of drug possession. After a search of the
vehicle, the deputies had evidence to justify a more extensive search of appellant. The
methamphetamine discovered in appellant's pants then gave them probable cause to justify
appellant's arrest for narcotics possession.


CONCLUSION


 Having concluded that the trial court did not err in denying appellant's motion to
suppress the evidence, we overrule appellant's issue and affirm the trial court's judgment.



 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 31, 2005

Do Not Publish
1. "A person commits an offense if he intentionally, knowingly, or recklessly carries on or
about his person a handgun . . . ." Tex. Pen. Code Ann. § 46.02(a) (West 2003).