# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00722-CR

**William Baptiste Bloys, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT
### NO. 4888, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

William Baptiste Bloys appeals the trial court's denial of his motion to suppress evidence obtained from the search of his vehicle during a routine traffic stop. He pleaded *nolo contendere* to the charge of possession of a controlled substance and received a five-year sentence, probated to seven years plus a fine, costs, and community service. *See* Tex. Health & Safety Code Ann. § 481.115 (West 2003). On appeal, he contends that the search violated his rights against unreasonable search and seizure as protected by the United States and Texas Constitutions. *See* U.S. Const. amend IV; Tex. Const. art. I, § 9. We overrule appellant's sole issue and affirm the judgment of conviction.

**BACKGROUND**

Appellant was pulling a trailer with his van and John Pierce was his passenger when Menard County Sheriff's Deputy Jeff Whitson stopped him because of the trailer's nonfunctional taillight and license-plate light. *See* Tex. Transp. Code Ann. § 547.322(a), (f) (West 1999). After stopping appellant, Whitson asked him whether he had ever been arrested, or was carrying any weapons or illegal drugs. Although appellant initially answered each of these questions negatively, he then acknowledged having a rifle and also a handgun. Although Whitson requested appellant's consent to search, appellant did not consent to a search of his vehicle. But Whitson observed signs consistent with drug use, including appellant's trembling extremities and failure to maintain eye contact when questioned on the subject. Whitson attempted to summon a canine unit for further investigation, but the dispatcher estimated it would be two hours before the dog could be brought to the scene. Believing that he could not justifiably detain appellant for two hours, Whitson did not charge appellant and released him with a warning ticket for the traffic violation.

After releasing appellant, Whitson called McCulloch County Sheriff's Deputy Jason Corbell to advise him that appellant would be traveling through McCulloch County, that he was towing a trailer with a broken taillight and license-plate light, that Whitson had observed appellant with a pistol and a rifle, and appellant had "indicators" of possession of illegal drugs. When Corbell observed appellant's vehicle pass him in the opposite direction, Corbell made a u-turn and stopped appellant. As Corbell approached the vehicle, appellant exited the car and met Corbell about halfway between the two cars. When asked if he had any weapons in the car, appellant answered affirmatively. When Pierce was asked the same question he responded, "I'm not sure." Corbell then

2

asked appellant if he had ever been arrested. Appellant confirmed that he had been previously arrested for methamphetamine and weapons charges. When asked about the presence of illegal drugs in the vehicle, appellant answered negatively, but when asked specifically about methamphetamine, appellant looked down at his feet and did not maintain eye contact while answering. When Corbell asked Pierce whether there were any illegal drugs in the vehicle, he answered, "No, not really." Pierce then consented to a search of his person. As a result of the search, Corbell found the wrapper of a hypodermic needle in Pierce's pocket, and "track marks" from repeated hypodermic drug use on his arms, including a recent injection wound still marked with blood. Pierce admitted to having "shot up" that morning.

Based on the evidence of drug use, Corbell continued questioning appellant and Pierce and phoned Deputy Adam Hernandez for back-up, due to the presence of weapons. Corbell conducted a pat-down search of appellant for weapons, but did not find any. When Hernandez arrived, he performed another pat-down on appellant, and did not find anything.

Approximately ten minutes after the initial stop, Corbell called Deputy Tye Tully and requested the canine unit. Tully arrived with the dog thirty or forty minutes later. While inspecting the vehicle from the outside, the dog "alerted" to the driver's and passenger's doors. At this point, appellant stated, "Y'all can search the vehicle." Inside the van, Hernandez discovered a scale with what appeared to be methamphetamine residue on it. After Hernandez conducted a more thorough search of appellant's person, he discovered a plastic bag containing approximately forty-nine ounces of methamphetamine in appellant's pants. Appellant was arrested and charged with felony possession of a controlled substance.

Following a hearing, the trial court denied appellant's motion to suppress the evidence obtained from the search of his vehicle. The trial judge certified appellant's right to appeal the evidentiary ruling, and made the following findings of fact:

1. Defendant was stopped by a McCulloch County Sheriff's deputy for defective equipment and a missing trailer license plate.

2. Defendant and Defendant's passenger appeared very nervous during the stop and displayed indicators of deception when asked about narcotics.

3. Defendant admitted to previous Methamphetamine and weapons arrests.

4. Defendant's passenger consented to a search of his person yielding a hypodermic needle and "track marks" on his arm.

5. Defendant admitted to the officer that he was unlawfully carrying a handgun in his console.

6. Defendant refused consent to search his vehicle, but stated to the officer, "go ahead and get the dog to search the vehicle."

7. A free-air search of the vehicle yielded at least one positive alert on the vehicle.

8. A search of the vehicle found weight scales with apparent methamphetamine residue on them, and a handgun was found in the vehicle's console.

9. Defendant was patted down, and a bulky object in the crotch area of the Defendant was detected. The object was removed and was determined to be two plastic bags containing 49 grams of methamphetamine.

Based upon his findings of fact, the trial court found that the officers had reasonable suspicion for the traffic stop and appellant's continued detention based upon the totality of the circumstances and probable cause to arrest based upon the possession of the handgun.

4

**ANALYSIS**

In his sole point of error, appellant argues that the trial court erred in denying the motion to suppress the evidence because the deputies illegally expanded the search of his vehicle and the continued detention was therefore unreasonable.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). A reviewing court grants almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that turn on the evaluation of the credibility and demeanor of witnesses. *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We review questions of reasonable suspicion and probable cause *de novo*. *Id*. at 87.

*Reasonable Suspicion and Investigative Detention*

The permissible extent and duration of a search pursuant to a routine traffic stop is limited by the reasonableness requirement of the United States and Texas Constitutions. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *see also Terry v. Ohio*, 392 U.S. 1, 19-20 (1968); *Davis v. State*, 947 S.W.2d 240, 242-45 (Tex. Crim. App. 1997). In *Hulit v. State*, the court of criminal appeals held that the protections of article I, section 9 of the Texas Constitution are no greater than those of the federal constitution, and may be less. 982 S.W.2d 431, 436-37 (Tex. Crim. App. 1998). Thus, we consider the broader protection of the federal constitution.

Police searches are reviewed under a two-prong test: first, the officer's action must be justified at its inception, and second, the search must be reasonably related in scope to the circumstances that justified the initial interference. *Terry*, 392 U.S. at 19-20; *Davis*, 947 S.W.2d at 242. Under the first prong, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Brother v. State*, No. PD-1820-02, 2005 Tex. Crim. App. LEXIS 983, at *4 (Tex. Crim. App. June 29, 2005); *Davis*, 947 S.W.2d at 242 (citing *Terry*, 392 U.S. at 21). The second prong requires that the search "must be strictly circumscribed by the exigencies which justify its inception." *Davis*, 947 S.W.2d at 243 (citing *Terry*, 392 U.S. at 25-26). Once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Id*. at 243 (citing *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsburg, J., concurring)).

Searches that satisfy both prongs of this test establish the officer's "reasonable suspicion" for the search. *Terry*, 392 U.S. at 20. Reasonable suspicion is judged by an objective standard, not the subjective intent of the officer, and must be based on the totality of the circumstances under which the search occurred. *Garza v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). "Reasonableness" must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997).

*Probable Cause*

Probable cause is present when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000); *see also Guzman v. State*, 955 S.W.2d at 87. Once officers have probable cause to arrest, they are justified in conducting a search incident to a lawful custodial arrest. *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999).

*Probable Cause Based on Weapons Violation*

Under the second prong of *Terry*, appellant contends that the deputies' actions should have been limited to investigating and following up on the basis for the initial traffic stop—the broken taillight—and that any questions regarding drugs or weapons exceeded the permissible scope of the detention. Appellant contends that the trial court erred when it denied his motion to suppress evidence obtained during the stop on the basis of Corbell's and Hernandez's "reasonable suspicion," stating that, after the initial detention and questioning, probable cause was required; reasonable suspicion was not enough. In the course of the initial stop, appellee admitted an actual criminal violation, i. e., unlawfully carrying a handgun, and Whitson formed a reasonable suspicion of other criminal activity. *Terry* requires only reasonable suspicion, not probable cause, to justify a frisk for weapons pursuant to a routine stop. 392 U.S. at 30-31. While probable cause was required for the vehicle search and the search of appellant that actually led to the discovery of the methamphetamine, appellant's admission that he was carrying a handgun in his vehicle was sufficient to give probable cause for his arrest early on at either of the two stops, and the trial court so found. *See* Tex. Pen.

7

Code Ann. § 46.02(a) (West 2003);[1] *see also Christian v. State*, 686 S.W.2d 930, 933 (Tex. Crim. App. 1985) (language "on or about his person" in section 46.02 construed to include "at least the interior of an automobile"); *Hazel v. State*, 534 S.W.2d 698, 700 (Tex. Crim. App. 1976) (proof that appellant's pistol was on floorboard of automobile established that he carried it on or about his person); *Hendricks v. State*, 2002 Tex. App. LEXIS 6247, at *2 (Tex. App.—Dallas 2002, pet. ref'd) (not designated for publication); *Contreras v. State*, 853 S.W.2d 694, 696 (Tex. App.—Houston [1st Dist.] 1993, no writ) (carrying on or about person includes interior of one's vehicle). Once the deputies had probable cause to arrest appellant, they were justified in conducting a search incident to a lawful custodial arrest. *Ballard*, 987 S.W.2d at 892; *Williams v. State*, 726 S.W.2d 99, 100-01 (Tex. Crim. App. 1986). Such a search may be conducted either before or after the formal arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *Ballard*, 987 S.W.2d at 892; *Williams*, 726 S.W.2d at 101. Thus, the deputies' search of appellant's person and vehicle were justified by the probable cause they had to arrest him as soon as they discovered that he was illegally carrying a handgun in his car. We will nonetheless address appellant's complaint that the scope of the detention exceeded that permitted by *Terry*.

*Reasonable Suspicion Due to Totality of Circumstances*

Immediately upon stopping appellant, Whitson observed that appellant was extremely nervous, was trembling, and had difficulty maintaining eye contact during questioning. This gave Whitson a reasonable suspicion that criminal activity was afoot and justified further questioning

---

[1] "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun . . . ." Tex. Pen. Code Ann. § 46.02(a) (West 2003).

beyond the scope of the initial purpose of the stop. Appellant then acknowledged he was carrying a handgun in the car. Although he was not charged with that offense, his continued evasive responses to Whitson's questions justifiably increased Whitson's suspicion. After appellant denied consent to search his vehicle, Whitson did not believe he could detain him long enough to bring in the canine to search for drugs.

Whitson based his tip to Corbell on the information he gathered during questioning that was justified by his reasonable suspicion. Whether Corbell's initial traffic stop was based on the broken taillight, on Whitson's tip that appellant was armed, or both, the trial court found it reasonable under the totality of the circumstances, and we agree. A tip possessing sufficient indicia of reliability may provide the reasonable suspicion necessary to justify an investigative detention. *Alabama v. White*, 496 U.S. 325, 326-27 (1990); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Here the tip was provided by a member of a neighboring county's sheriff's department, and it was reasonable for Corbell to conclude that the tip was reliable.

Thus, Corbell had reasonable suspicion for his original stop, whether based on his observation of appellant's traffic violation or the tip provided by Whitson. In particular, this tip provided Corbell with a basis for reasonable suspicion other than the broken taillight, justifying his initial line of questioning regarding weapons and drugs. When appellant admitted that he had a handgun in the car, as well as an arrest record, Whitson already had probable cause to arrest appellant for this violation or at least to question him further. Appellant's evasive manner when asked about the presence of methamphetamine, coupled with Pierce's equivocal answer when asked

9

the same question, provided reasonable suspicion that was sufficient to justify the initial pat-downs of both men.

These pat-downs were within the limitations contemplated by *Terry* and *Davis*. They sought only to uncover other possible weapons about which the deputies were justifiably concerned for their own safety after discovering a rifle and a handgun in the van. The pat-down of Pierce then uncovered evidence of illegal drug use. Thus, the legality of the vehicle search was not dependent on the results of the canine alert, because Corbell already had probable cause to search appellant's vehicle when he discovered the evidence of illegal drug use on Pierce and the illegally concealed weapon on the front seat of the vehicle.

Discovery of the scales in the car only bolstered the basis for Corbell's and Hernandez's reasonable suspicion of criminal activity and justified the decision to search appellant's person more extensively than before. This was not a "fishing expedition," but an investigation that was limited at each stage by the reasonable suspicion that the observed facts justified. The investigation progressed as evidence continued to be revealed.

Appellant relies on *Davis* to assert that the deputies exceeded the limits of an investigative detention. While *Davis* stands for the general proposition that detentions and searches must be limited in time and scope, the facts of that case are distinguishable from those before us. The motorist in *Davis* was detained after an initial stop for suspicion of driving while intoxicated. *Davis*, 947 S.W.2d at 241. The investigating officers determined that Davis was not intoxicated. *Id.* The officers continued to detain Davis and searched his vehicle despite his refusal to give consent for them to do so. *Id.* The officers who searched Davis testified that they formed their

suspicions based on the following: (i) it was approximately 1:00 a.m.; (ii) Davis was driving a borrowed vehicle, which was confirmed not to be stolen; (iii) Davis was not dressed "as a businessman," which he claimed to be; and (iv) Davis appeared nervous. *Id*. at 247-48 (Mansfield, J., concurring). The court of criminal appeals stated that these alleged justifications for reasonable suspicion were insufficient to uphold the search. *Id*. at 246. Indeed, the officers told Davis that he was free to go, which the court took as the officers' realization that they lacked probable cause or reasonable suspicion to justify detaining him further. *Id*. at 245. The officers informed him that they would detain his vehicle to perform a further search—which effectively prevented Davis from leaving because the vehicle was his sole means of transport. *Id*. at 246.

Davis's situation contrasts with appellant's because appellant was initially stopped on the basis of an actual traffic violation as well as a tip, not mere suspicion. Within moments of the initial stop, appellant exhibited behavior that preceded a series of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] the continued intrusion." *Brother*, 2005 Tex. Crim. App. LEXIS 983, at *4; *Davis*, 947 S.W.2d at 242. Appellant's and Pierce's contradictory and ambiguous responses to questioning, appellant's extreme trembling, and Pierce's track marks distinguish this case from Davis's mere "nervousness." Each of these behaviors and observations gave rise to the officers' heightened level of reasonable suspicion—admission of an ongoing criminal offense, the illegal carrying of a handgun in the vehicle, observation of evidence of recent illegal drug use along with the scales containing possible drug residue—culminating in probable cause for arrest when the concealed contraband was found

11

on appellant's person. And here, the deputies had probable cause to arrest appellant for the weapons violation as soon as they confirmed his possession of the illegally concealed handgun.

*Terry* and *Davis* require officers to use the least intrusive methods when conducting a traffic stop based only on their observation of a minor traffic violation. However, when the officers making the stop observe activity which gives rise to a reasonable suspicion of further criminal activity, the first prong of *Terry* is satisfied, and a continuation of the investigation is justified, with a scope which may be broader than the one which was justified by the original stop, and which uncovered the new basis for increased suspicion. This chain of reasonable inferences extending an investigation does not so far remove the final product of the search from the initial reason for the stop as to render the product of that search inadmissible or the search unreasonable. Instead, this graduated method encourages law enforcement officers to take a measured approach and examine the totality of the circumstances, as they uncover evidence incrementally and their suspicions are confirmed or increased, rather than rushing in based on an insufficiently formulated suspicion not reasonably implied by the evidence so far discovered. It also allows officers to stop such an investigation at any point if their continued investigation fails to reveal any more incriminating evidence.

In sum, Whitson stopped appellant for a traffic violation. Appellant exhibited signs of drug involvement and Whitson discovered that appellant was illegally concealing a weapon. Corbell and Hernandez, acting on a reliable tip from Whitson, had reasonable suspicion of the weapons violation. Once they confirmed the presence of the illegal weapon, they had probable cause to arrest appellant for that offense. The search conducted after that point was justified as incident

12

to a lawful custodial arrest. During the stop, Corbell and Hernandez incrementally discovered further evidence supporting their reasonable suspicion of drug possession. After a search of the vehicle, the deputies had evidence to justify a more extensive search of appellant. The methamphetamine discovered in appellant's pants then gave them probable cause to justify appellant's arrest for narcotics possession.

## CONCLUSION

Having concluded that the trial court did not err in denying appellant's motion to suppress the evidence, we overrule appellant's issue and affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 31, 2005

Do Not Publish

13