NO. 07-11-00230-CR
 
 IN THE COURT OF APPEALS
 
 FOR THE SEVENTH DISTRICT OF TEXAS
 
 AT AMARILLO
 
 PANEL A
 
--------------------------------------------------------------------------------
JANUARY 19, 2012
--------------------------------------------------------------------------------

 
 THE STATE OF TEXAS, APPELLANT
 
 v.
 
 GERRY WAYNE VARNER, APPELLEE 
--------------------------------------------------------------------------------

 
 FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;
 
 NO. 10-12-7205; HONORABLE PAT PHELAN, JUDGE
--------------------------------------------------------------------------------

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION
 
The State of Texas brings this appeal from the trial court's order granting appellee Gerry Wayne Varner's motion to suppress. Through two issues, the State argues the trial court erred in its ruling. We will affirm.
 Background
At 3:30 on a Wednesday afternoon in October 2010, a Hockley County sheriff's office lieutenant and drug interdiction officer, Jeff Holder, stopped Varner after seeing him commit several traffic offenses, including failure to signal his intent to change lanes, failure to maintain a single lane, and following too closely to another vehicle. Holder issued a warning to Varner. But, because he suspected Varner of drug offenses, Holder prolonged his detention until a K-9 officer arrived with a drug dog. After Varner refused consent to a search of his car, Holder maintained the detention while the K-9 officer led the dog through a free air sniff around Varner's car. After the dog gave a positive alert, the officers searched the car and found methamphetamine. Varner's person was searched but no contraband was found. Varner was arrested and later charged with possession of a controlled substance with intent to deliver in an amount of four grams or more but less than 200 grams.
Varner filed a motion seeking suppression, inter alia, of all tangible evidence seized during the search. At the trial court's hearing on the motion, Holder was the only witness to testify. A patrol car video recording was played during his testimony. The trial court granted Varner's motion to suppress and filed its findings of fact and conclusions of law. The State now appeals.
 Analysis
Standing
It its first issue, the State challenges Varner's standing to contest the search of the vehicle he was driving the day of the stop. However, this issue was not raised before the trial court and thus has not been preserved for our review. Tex. R. App. P. 33.1(a)(1); Butler v. State, 872 S.W.2d 227, 236 (Tex.Crim.App. 1994); Adams v. State, 179 S.W.3d 161, 164 (Tex.App.--Amarillo 2005, no pet.) (to preserve an issue for appellate review, the complaining party must make a timely objection to the trial court that properly states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion). 
We resolve the State's first issue against it.
Reasonable Suspicion to Prolong Detention
 The State sets forth an alternative to its standing contention, arguing Holder developed additional reasonable suspicion during the initial detention that allowed him to prolong his detention of Varner. 
Applicable Law
A reasonable-suspicion determination is made by considering the totality of the circumstances. Ford v. State, 158 S.W.3d 488, 492-93 (Tex.Crim.App. 2005). Reviewing a trial court's ruling on a motion to suppress, appellate courts afford almost total deference to its determinations of historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The determination whether reasonable suspicion exists, however, is a mixed question of law and fact. Id. at 87. Appellate review of such an issue defers to the trial court when resolution of the ultimate question turns on an evaluation of credibility and demeanor, but otherwise is conducted de novo. Hereford v. State, 339 S.W.3d 111, 118 (Tex.Crim.App. 2011) 
With respect to suppression issues, the trial judge is always the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony." York v. State, 342 S.W.3d 528, 544 (Tex.Crim.App. 2011). An appellate court reviewing a trial court's ruling on a motion to suppress must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008) (party prevailing in trial court is afforded "strongest legitimate view of the evidence and all reasonable inferences"); Roy v. State, 90 S.W.3d 720, 723 (Tex.Crim.App. 2002); Villarreal v. State, 935 S.W.2d 134, 139 (Tex.Crim.App.1996); Taylor v. State, 20 S.W.3d 51, 54-55 (Tex.App.--Texarkana 2000, pet. ref'd). With respect to such issues, the trial court is permitted to draw rational inferences in favor of either party. York, 342 S.W.3d at 544. 
A trial court's findings based on inferences rationally drawn from the evidence are entitled to deference on appellate review. Manzi v. State, 88 S.W.3d 240, 243 (Tex.Crim.App. 2002) (quoting Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573-74, 84 L.Ed.2d 518, 105 S.Ct. 1504 (1985), to effect that trial court findings supported by a permissible view of the evidence are entitled to deference, even when based on inferences from other facts). This is true of findings the trial court draws from its viewing of videotape evidence. Montanez v. State, 195 S.W.3d 101, 109 (Tex.Crim.App. 2006) (deferential standard of review under Guzman applies to trial court's determination of historical facts based on videotape recording). 
If during a valid traffic stop the officer develops reasonable suspicion that the detainee is engaged in other criminal activity, prolonged or continued detention is justified. Davis v. State, 947 S.W.2d 240, 244-45 (Tex.Crim.App. 1997); Haas v. State, 172 S.W.3d 42, 52 (Tex.App.--Waco 2005, pet. ref'd); Perales v. State, 117 S.W.3d 434, 439 (Tex.App.--Corpus Christi 2003, pet. ref'd). The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). In our determination whether reasonable suspicion existed for prolonging this traffic stop, we must give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences the officer was entitled to draw from the facts in light of his experience. See Davis, 947 S.W.2d at 242 n.3 (quoting Terry v. Ohio, 392 U.S.1, 20, 88 S.Ct. 1986, 20 L.Ed.2d 889 (1968)). Any investigative detention that is not based on reasonable suspicion is unreasonable and violates the Fourth Amendment. Davis, 947 S.W.2d at 242.
Application
Varner does not challenge the legitimacy of the initial traffic stop. The question before us is whether Holder's prolonged detention of Varner after the purpose of that stop was accomplished violated Varner's rights under the Fourth Amendment. 
The initial detention started when Holder stopped Varner for traffic violations and its purpose was satisfied when he handed Varner the warning citation and told him "You're good to go." Varner asked Holder "Am I free to go?" and Holder answered "Yes." Holder testified he would have "let [Varner] walk away." 
Holder also testified, however, that by that time he had noticed other factors, which the State contends gave him a reasonable suspicion that Varner was engaged in other criminal activity, justifying his continued detention for further investigation. Davis, 947 S.W.2d at 244. In its brief, the State lists thirteen factors, taken from Holder's testimony.
Three of the State's factors concern Holder's impression that Varner gave him inconsistent information regarding his employment. The State refers to Holder's testimony that Varner had a "thick stack" of cash in his wallet, even though he stated later in their conversation that he did not get paid that day and had not been working that day. The State also refers to Holder's testimony Varner's "dress and appearance" were inconsistent with his "original story" to Holder that he had been performing manual labor, and Holder's statement Varner "changed his story" by retracting his comment he had been at work previously on that day. The trial court's findings of fact, however, make no reference to inconsistency in Varner's statements to Holder about his employment. The court found only that Holder noticed Varner had a "big wad of cash," that Holder "was concerned that [Varner] was clean shaven" and that Holder "did not like [Varner's] explanation about his employment." 
The record shows Holder executed the traffic stop at 3:31 in the afternoon. From our review of the patrol car recording, it appears the "change of story" the State refers to occurred during the following exchange: 
Holder: What kind of hours do you work over at Bell [Mobile Homes]?
Varner: I work from 8 in the morning `til whenever they call it a day.
Holder: Ya'll get off early today?
Varner: Yes, sir.
Holder: What do you do for Bell?
Varner: Set up mobile homes.
Holder: What did ya'll set up today?
Varner: I didn't work today.

In its list of factors, the State also points to Holder's opinion that Varner's "body language and physical movements" during their conversation indicated an attempt to "create a barrier" between him and the officer. The movement Holder identified was Varner's action of folding his arms across his chest as they conversed while standing between their vehicles. The trial court made no mention of this observation in its findings of fact. 
The State next points to two factors Holder testified he considered consistent with methamphetamine use, those being his observations that Varner appeared thinner in person than in his driver's license photo, indicative of weight loss, and that Varner had tooth decay. The trial court stated in its findings that Holder "was concerned" that Varner was thinner than in his photo, but did not mention tooth decay in its findings. Nor did the trial court make any finding regarding Varner's possible methamphetamine use. It found as a fact that Holder "believed [Varner's] actions were consistent with drugs or money laundering." 
Also among the thirteen factors identified by the State is Varner's statement to Holder that he was paying surcharges on his driver's license, which Holder testified is common among those convicted of drug-related offenses.
The remaining six of the State's listed thirteen factors relate to Holder's opinion that Varner exhibited "extreme nervousness" before and during the traffic stop. The State argues Holder said he saw signs of nervousness in Varner's (1) commission of multiple traffic violations after Holder pulled his vehicle behind Varner's; (2) shaking hands; (3) labored breathing; (4) pulsing carotid artery; (5) shaky voice; and (6) dry mouth and tongue. 
The trial court's findings recite that "Deputy Holder noticed that [Varner] did not calm down after the warning. [He] continued to show signs of being nervous."
The record demonstrates Holder has several years' experience in drug interdiction. In its findings of fact, the trial court was complimentary of Holder, stating he was to be commended for his courtesy and professionalism. Our reading of the court's fact findings and conclusions of law, however, leads us to the conclusion the trial court, in some significant respects, did not view the facts in the same manner as did Holder. As we read the record, the trial court discounted the significance of some of Holder's observations and discounted his opinions of the conclusions to be drawn from others. 
As noted, with respect to the inconsistency Holder perceived in Varner's statements concerning his work, the trial court found only that Holder "did not like" Varner's explanation. We read the court's finding as indicating the court did not find significant inconsistency in Varner's statements. See State v. Ramirez, 246 S.W.3d 287, 289 (Tex.App. -- Amarillo 2008, no pet.) (failure of trial court to include in its findings of fact one asserted by testimony, coupled with conclusion contrary to the asserted fact, may be read by appellate court as indication trial court found testimony incredible). Having reviewed the video recording, neither do we find the inconsistency the State sees to be significant. 
We reach a similar conclusion with regard to the court's finding Holder "was concerned" about Varner's apparent weight loss since the taking of his driver's license photo. We read that limited finding as indicating the court did not assign great weight to the inference of methamphetamine use that Holder drew from Varner's appearance.
Because the trial court included no findings concerning the opinion Holder drew from Varner's practice of crossing his arms, or concerning Holder's inference of methamphetamine use from the condition of Varner's teeth, we read its findings as indicating also it did not assign any weight to them in its analysis of the evidence. See Ramirez, 246 S.W.3d at 289. 
Like any fact finder, the trial court here had the tasks of determining the facts and drawing reasonable inferences from them, and its exercise of those tasks is entitled to deference. Manzi, 88 S.W.3d at 243. The trial court was not required to agree with the inferences Holder drew from his observations and we will defer to the trial court's determinations. 
The trial court's legal conclusion regarding the "degree of suspicion" properly attaching to the observations Holder articulated, and the State emphasizes, as indicative of criminal activity in this case was heavily dependent on its evaluation of Varner's demeanor and words during the traffic stop. In other words, its application of the law of reasonable suspicion to the facts as it found them turned on its evaluation of Varner's demeanor and words, as depicted both from Holder's testimony and the video recording. Holder testified Varner's level of nervousness was extreme, and that his statements about his employment that morning were inconsistent. The video evidence permitted the trial court to perform its own evaluation of such factors as Varner's level of nervousness, the significance of the inconsistency of his statements about his work, and the significance vel non of his practice of crossing his arms during conversation. It was the role of the trial court in this case to compare Holder's testimony with the video evidence, and weighing the evidence, determine the historical facts and the inferences reasonably drawn from them. Viewed in the light most favorable to its ruling, the record supports the court's conclusion that Varner's actions, appearance and demeanor did not give rise to a reasonable suspicion he was engaged in criminal activity. 
Accordingly, we affirm the trial court's ruling.

 James T. Campbell
 Justice

Do not publish.