

**NUMBER 13-16-00025-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSEPH CARL HULSEY,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

### On appeal from the 18th District Court of Johnson County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria**
**Memorandum Opinion by Justice Garza**

Appellant Joseph Carl Hulsey was convicted of possession of four to 200 grams of methamphetamine with intent to deliver, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West, Westlaw through 2015 R.S.). He was sentenced to 36 years' imprisonment. On appeal, he argues that: (1) the trial court erred by denying his motion to suppress; (2) the trial court erred by failing to instruct the jury regarding the

unconstitutionality of an extended traffic stop; (3) the trial court erred by failing to instruct the jury regarding the inadmissibility of illegally-obtained evidence; and (4) the evidence was insufficient to support his conviction. We affirm as modified.[1]

## I. BACKGROUND

Police officer Don Adams testified that he was patrolling the Days Inn hotel in Burleson, Texas, on the morning of June 3, 2014. Adams stated that he frequently patrols the hotel because there have been "numerous calls for service" at that location regarding drug transactions. Adams observed a blue four-door Nissan sedan with a "stick-figure family" decal on the back parked at the hotel. Later in the day, when he was patrolling Interstate 35, he observed the same vehicle parked in a closed rest area.[2] A video recording from Adams's vehicle was entered into evidence. The recording shows that there were two temporary barricades near the entrance of the rest stop that had apparently been moved aside and were not blocking the entrance at the time the officer arrived.

Adams made contact with the driver, Hulsey, and noticed that there were towels covering the windows of the car. According to Adams, Hulsey stated that he was a long-haul truck driver from the Fort Worth area, that he was waiting for his truck to be repaired, and that he was having lunch with his wife Meredith, who was a passenger in the vehicle.[3] Adams radioed dispatch and discovered that both Hulsey and his wife were registered

---

[1] This appeal was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

[2] Adams testified that the rest area was closed to the public and was "in the process of being demolished" and "turned into a commercial motor vehicle checkpoint." He testified that "there were signs up that said it was closed." On the video, there appears to be a sign to the right of the rest area entrance, but the sign is illegible.

[3] Audio of the encounter is not included on the video recording.

2

owners of the vehicle and that both had outstanding Class C traffic warrants. Adams called for backup, which he testified was departmental policy.

As soon as the backup officer, Mark Pate, arrived on the scene, Adams asked Hulsey to step out of the car, and Hulsey agreed to do so. Adams testified that Hulsey gave him permission to pat him down, to reach into his pockets, and to search the vehicle.[4] Adams observed, on the vehicle's front passenger seat, a purse that appeared to be made out of duct tape. Inside the purse, Adams found a plastic bag containing what he believed to be amphetamine residue. He then found on the passenger side floorboard a lockbox marked with the name "JOE." Adams asked Hulsey if he knew the combination for the lockbox and Hulsey gave him the combination. Adams opened the lockbox and found three plastic bags of what he believed to be methamphetamine, along with two scales, several plastic baggies, a glass pipe, several butane lighters, and an envelope marked "To My Joe." Adams also found a plastic container in the car's glove box which contained what he believed to be methamphetamine.

Pate testified that, as Adams was searching the car, he read Hulsey his *Miranda* warnings and Hulsey nodded in agreement. According to Pate, Hulsey initially declined to talk with him. Pate testified:

> I asked him, Just go ahead and sit down and we're going to continue what we're doing. As I was walking away, he asked me, Do you have any questions? I said, Yeah, I've got questions but I can't talk to you right now because you didn't waive your rights. So he then—I reminded him of his rights again and he said, Okay, I'll talk.

Pate proceeded to inform Hulsey that Adams had found "potential drug exhibits" in the car. According to Pate, Hulsey "told me that all of it was his." Pate testified that Hulsey

---

[4] Adams testified over defense counsel's objection that it is "extremely common" for someone to give consent to search even though they might be in possession of contraband.

3

told him that he had three-quarters of an ounce of methamphetamine in a lockbox and in a Q-tip container. Hulsey explained that the methamphetamine would be "shards and shake," meaning large glass-like pieces and powder. In total, the material in the car was later confirmed to be 23.45 grams, or approximately .83 ounces, of methamphetamine.

Prior to trial, Hulsey moved to suppress the drug evidence and the statements he made to Pate. After a hearing, the trial court denied the motion and made findings of fact and conclusions of law, including findings that Pate advised Hulsey of his *Miranda* rights, that Hulsey acknowledged those rights, and that Hulsey "knowingly, intelligently, and voluntarily waived" those rights. The trial court further found that Hulsey "was lawfully detained while awaiting confirmation of his arrest warrants."

Following trial, Hulsey was found guilty and was sentenced to 36 years' imprisonment.[5] This appeal followed.

## II. DISCUSSION

### A. Motion to Suppress

Hulsey argues by his first issue that the trial court erred in denying his motion to suppress. We review a trial court's pre-trial suppression ruling under a bifurcated standard. *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013) (footnotes and citations omitted). Almost total deference is afforded to the trial court's determinations of fact, which include "who did what, when, where, how, or why" and "credibility determinations." *Id.* Because trial judges are uniquely situated to observe first hand the demeanor and appearance of a witness, they are the sole arbiter of questions of fact and of the weight and credibility to give testimony. *Id.* When a trial judge makes written

---

[5] Meredith Hulsey was also charged with possession of methamphetamine with intent to deliver. Prior to appellant's trial, she pleaded guilty and was sentenced to 25 years' imprisonment.

4

findings of fact, as here, we examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *Id.* We then proceed to a *de novo* determination of the legal significance of the facts as found by the trial court. *Id.* We will uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

The United States and Texas Constitutions protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. "[E]vidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America" is inadmissible in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2015 R.S.). Generally, searches conducted without a warrant are deemed unreasonable. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). There are, however, several well-settled exceptions to the warrant requirement, one of which arises when a person voluntarily consents to a search. *Id.* A consensual encounter may be terminated at any time and is not considered a seizure that would trigger Fourth Amendment protection. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

On the other hand, an investigative detention—which requires reasonable suspicion of criminal activity under the Fourth Amendment—occurs when a reasonable person would not have felt free to ignore the police officer's request or terminate the consensual encounter. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In determining whether an interaction is a consensual encounter or a detention, we focus on whether the officer conveyed a message that compliance with the officer's request was required. *Crain*, 315

5

S.W.3d at 49. Circumstances that might indicate a detention include, for example, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 49–50 (citing *Mendenhall*, 446 U.S. at 554); *see State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) ("[W]hen an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual.").

Hulsey contends first that the trial court erred in concluding that he "was lawfully detained while awaiting confirmation of his arrest warrants." He next argues that the officer lacked reasonable suspicion to prolong the stop and search his vehicle. *See Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (noting that an investigative stop which is reasonable at its inception may violate the Fourth Amendment because of excessive intensity or scope) (citing *Terry v. Ohio*, 392 U.S. 1, 18 (1968)). The State argues in response that the evidence was discovered pursuant to a consensual encounter and, thus, there was no need to establish reasonable suspicion.

We agree with the State that the encounter was entirely consensual. Adams gave uncontroverted testimony that Hulsey freely gave permission for the officer to pat him down, to reach into his pockets, and to search the vehicle. There is no indication or suggestion that Hulsey's consent was coerced or involuntary. Though there were two officers present at the time the search was conducted, there was no evidence that Adams displayed his weapon or used language or a tone of voice indicating that compliance with his requests was compelled. *See Crain*, 315 S.W.3d at 49–50.

Even if we were to conclude that Hulsey was subject to an investigative detention, such a detention was supported by reasonable suspicion under the circumstances of this

6

case. In the course of a routine traffic stop, the detaining officer may request a driver's license, car registration, and insurance; use that information to conduct a computer check for outstanding arrest warrants; question the vehicle's occupants regarding their travel plans; and issue a citation. *Kothe v. State*, 152 S.W.3d 54, 64 n.36 (Tex. Crim. App. 2004) (citing *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003)); *Davis*, 947 S.W.2d at 245 n.6; *see Woodard*, 341 S.W.3d at 411 ("Law enforcement is free to stop and question a fellow citizen; no justification is required for an officer to request information from a citizen."). Once the officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that another offense has been or is being committed. *See Davis*, 947 S.W.2d at 245.

Here, although the video recording established that there were no physical barricades preventing entry into the rest area at the time the officer arrived, the recording shows that there were two such barricades that appeared to have been moved out of position. Adams testified that he observed Hulsey's vehicle parked earlier in the day at a hotel that was known for drug activity, despite the fact that Hulsey stated he lived nearby.[6] Adams further noted that the windows of Hulsey's vehicle were covered by towels.[7] Adams then asked Hulsey and his wife for identification and discovered that they had warrants outstanding for their arrest. *See Kothe*, 152 S.W.3d at 64 n.36; *see also Greer v. State*, 436 S.W.3d 1, 7 (Tex. App.—Waco 2014, no pet.) ("An outstanding arrest

---

[6] Burleson is approximately 15.5 miles from Fort Worth.

[7] Hulsey notes that Adams did not observe him or his wife commit illegal activity at the time the encounter began. However, "[t]he facts that an officer relies on to raise suspicion that illegal conduct is afoot need not be criminal in themselves; they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be." *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013).

7

warrant may be executed by law enforcement officers at whatever time and place they choose."). Taken together, these articulable facts could have led the officer to reasonably believe that criminal activity was afoot. *See Wade*, 422 S.W.3d at 668 ("A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.").

Further, even if the encounter were considered an investigative detention, it was not unduly prolonged. *See Davis*, 947 S.W.2d at 243. Although the outstanding warrants were for minor traffic offenses, the other circumstances supported reasonable suspicion that Hulsey was engaged in other criminal activity. *Cf. Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1611 (2015) (noting that "[a] seizure justified only by a police-observed traffic violation . . . become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation"); *see Davis*, 947 S.W.2d at 245.

In light of the foregoing, we conclude that the search of the vehicle did not offend the Fourth Amendment, and the trial court did not abuse its discretion in denying the motion to suppress the drug evidence. We overrule Hulsey's first issue.

**B.** **Article 38.23 Instructions**

Hulsey contends by two issues that the trial court erred by denying his request for certain jury charge instructions. By his second issue, he argues that the trial court should have granted his request to include the following instruction in the jury charge: "Absent reasonable suspicion, police extension of a traffic stop in order to conduct a search violates the Constitution's shield against unreasonable search and seizures." By his third

issue, he contends that the trial court should have granted his request for another instruction: "If you determine that any evidence received in this case was illegally obtained, you must not consider that evidence in your deliberations."

Following a felony trial, the trial court must deliver to the jury a "written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2015 R.S.). We review the trial court's refusal to submit a jury charge instruction for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

Article 38.23 of the code of criminal procedure, the statutory exclusionary rule, provides as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* art. 38.23(a) (West, Westlaw through 2015 R.S.). To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct. *See Hamal v. State*, 390 S.W.3d 302, 307 (Tex. Crim. App. 2012) (holding that appellant was not entitled to an article 38.23 instruction where there was "no factual dispute" about what information the officer "received before and during the [traffic] stop");

9

*Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (holding that "[i]f there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law" and concluding that appellant was not entitled to an article 38.23 instruction where there was "no factual dispute" about what information the officer "received before and during the [traffic] stop").

Hulsey argues on appeal that "[a] dispute existed as to what traffic law was violated by Appellant, if any, to justify the initial stop, if the rest area had cones, barricades or nothing blocking the entrance of the rest area and whether closed signs were present notifying the public that the rest area was closed."[8]

We disagree that the trial court abused its discretion by denying Hulsey's requested instructions because there was no affirmatively contested fact issue which was material to the lawfulness of the police conduct. *See Hamal*, 390 S.W.3d at 307. The video recording from Adams's vehicle shows that barricades were present at the entrance to the rest area but had been moved aside so that the entrance was not blocked. This fact was not affirmatively contested at trial. *See id.* Further, the issue of "what traffic law was violated by [Hulsey]" was not material to the lawfulness of the police conduct because, as we have already concluded, Hulsey freely and voluntarily consented to the search of his vehicle. We overrule Hulsey's second and third issues.

## C.     Sufficiency of the Evidence

By his fourth issue, Hulsey argues that the evidence was insufficient to support his conviction. In reviewing sufficiency of the evidence, we consider the evidence in the light

---

[8] The State argues that Hulsey waived these issues because his counsel at trial did not identify any fact issues which were "affirmatively contested" or "material to the lawfulness of the challenged conduct." *See Hamal v. State*, 390 S.W.3d 302, 307 (Tex. Crim. App. 2012); *see also* TEX. R. APP. P. 33.1. We assume but do not decide that the issue was preserved.

10

most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, a hypothetically correct jury charge would instruct the jury to find Hulsey guilty if he knowingly possessed with intent to deliver four grams or more but less than 200 grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). Hulsey challenges both the knowing possession and intent to deliver elements.

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West, Westlaw through 2015 R.S.). When the accused is not in exclusive possession of the place where the substance is found, "it cannot be concluded that the accused had

11

knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406. Under this rule, mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). But presence or proximity, when combined with other direct or circumstantial evidence of "affirmative links" between the accused and the contraband, "may well be sufficient to establish that element beyond a reasonable doubt." *Id.*

Here, the evidence showed that the majority of the methamphetamine was found in a lockbox which bore Hulsey's name, which contained a letter addressed to Hulsey, and to which Hulsey knew the combination. According to Pate, Hulsey admitted that the methamphetamine belonged to him, and he stated that there would be three-quarters of an ounce, which is close to the total amount recovered of 23.45 grams.

Hulsey's wife testified at trial that all of the methamphetamine found in the vehicle belonged to her. She stated that the amounts found in the purse and glove box were for her personal use and that she intended to sell the amounts found in the lockbox to her sister in Abilene. She testified that she decorated the lockbox with her husband's name and that Hulsey did not look in the lockbox on June 3, 2014. The jury was entitled to reject this testimony and instead believe Pate's testimony that Hulsey told him that all of the methamphetamine belonged to him. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West, Westlaw through 2015 R.S.) (providing that "[u]nless otherwise provided in this Code, the jury is the exclusive judge of the facts"); *id.* art. 38.04 (West, Westlaw through 2015 R.S.) (providing that "[t]he jury, in all cases, is the exclusive judge of the facts

12

proved, and of the weight to be given the testimony" subject to exceptions not applicable here).

We further find that the evidence was sufficient to establish beyond a reasonable doubt that Hulsey harbored an intent to deliver.[9] "Deliver" means "to transfer, actually or constructively," a controlled substance to another. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8). Intent to deliver may be proved by circumstantial evidence, including evidence that an accused possessed the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Hulsey notes that there was no evidence of a large amount of money found in the vehicle. However, the evidence did establish that the methamphetamine was found along with two digital scales and several baggies. Additionally, as noted, the evidence supported a finding that Hulsey possessed the contraband. *See id.* Accordingly, the evidence was sufficient to support the jury's finding of intent to deliver. We overrule Hulsey's fourth issue.

### III. CONCLUSION

We note that the judgment incorrectly recites that the "statute for offense" is "Section 481.115(d), Health and Safety Code." Section 481.115 is the statute for possession of a controlled substance, whereas Hulsey was convicted of possession with intent to deliver under section 481.112. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d), 481.115 (West, Westlaw through 2015 R.S.). Accordingly, we modify the judgment to reflect the correct statute. *See* TEX. R. APP. P. 43.2(b); *Banks v. State*, 708 S.W.2d 460, 461 (Tex. Crim. App. 1986) (holding that when an appellate court has the

---

[9] The State does not address intent to deliver in its brief.

13

necessary data and evidence before it for modification, the judgment may be modified on appeal).

The trial court's judgment is affirmed as modified herein.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of December, 2016.